1

2

3

4

5

6

7

8

9

10

11

12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANDRE JONES, et al.,

                        Plaintiff(s),

v.

RABANCO, Ltd., et al.,

                        Defendant(s).

No. C03-3195P

ORDER REGARDING FARAGHER-
ELLERTH DISCOVERY

13

14

15

16

17

        This matter comes before the Court on Parties' Briefings regarding Forfeiture of the

Attorney-Client Privilege and Work Product Protections under the Fairness Doctrine and the

Faragher-Ellerth Defense.   Having considered the papers and pleadings submitted by both parties, the

Court makes the following rulings:

18

19

20

21

22

23

24

25

26

        •        The Plaintiffs plead hostile work environment from 2000-2004;

        •        The Defendants have raised the Faragher-Ellerth affirmative defense;

        •        Once the defense is raised, all materials pertaining to Defendants' fact gathering

                 investigation and remedial measures are "at issue" and any privilege attaching to these

                 documents is waived.  This is true for the investigation, whether or not an attorney

                 was involved in planning or advising the course of the investigation.  All documents

                 pertaining to remedial measures are at issue whether the measures were initiated by

                 counsel or not.  Defendant cannot shield documents associated with the fact gathering

                 investigation or the directives for remedial measures by having an attorney direct the

ORDER - 1

fact finding or ordering the remedial response to the investigation.  The only part of

this process that may be shielded from discovery is the lawyers' advice to the

corporate decision makers. The privileged materials may include lawyers' evaluations

of the investigation's factual findings drafted in preparation for meeting with the

decision makers and also any documents drafted by lawyers that present

recommendations for change.  Additionally, documents created during meetings

between Rabanco's attorney's and the decision-makers on the hostile work

environment issue will not be discoverable.  However, orders for implementation of

policy or facts shared with those charged with making changes, even if delivered by

attorneys to those taking action, are not protected by privilege.

## BACKGROUND

The parties composed this set of briefings pursuant to the Court's Minute Order

memorializing the August 26, 2004 discovery conference (Dkt. No. 120).  In this action, fifteen

Plaintiffs are alleging that during their employment at Allied Waste subsidiary companies Rabanco

Ltd. And Emerald Disposal Inc. ("Rabanco," collectively) they suffered Title VII racial discrimination

in the form of harassment, discrimination, and hostile working conditions because they are minorities

(Am. Compl. at ¶3.1).  In 2001, about 60 of the employees at these facilities composed and signed a

petition to the CEO of Allied alerting him of these alleged conditions.  In response, Bob Berres, a

mid-level manager, was fired and another, Gary Passmore, was relocated.  The Plaintiffs claim that

the racial slurs and degradation continued after this action, and even intensified.  Then, in June of

2003, the NAACP wrote a letter to Rabanco, asking that the company take action to cure these

problems within 10 days of receipt of the letter.  In response to this letter, Rabanco launched an

investigation, which was undertaken by HR employees and supervised by in-house counsel.

Plaintiffs now seek access to the documents produced in the course of this investigation.

They claim that because Defendants are asserting an affirmative defense to the allegation of hostile

work environment, they have implicitly waived any privilege that might have otherwise shielded the

ORDER - 2

1  investigation documents from discovery.  Defendants claim that the investigation documents are not

2  discoverable because they were prepared in anticipation of litigation and are protected by the

3  attorney-client and work-product privileges.  Defendants also argue that Plaintiffs have not made a

4  hostile work environment claim and for this reason the investigation is not at issue.

5

6                                                    ANALYSIS

7  **I.  Threshold Issue: Have Plaintiffs Alleged a Hostile Work Environment Claim?**

8          Defendants claim that the disclosure of documentation pertaining to internal Title VII

9  investigations under Faragher-Ellerth does not apply to them because the Plaintiffs have not brought a

10  hostile work-place claim, nor could the discriminatory actions they've alleged amount to a cognizable

11  hostile work-place claim under Title VII.  The Defendants argue that Plaintiffs' claims of demotion,

12  discharge, and discipline are disparate treatment claims.  (Defs' Br. at 8).  While it is true that

13  Plaintiffs have also alleged several claims that amount to disparate treatment under Title VII, they

14  plainly state in their Amended Complaint that, "[t]here are common facts of racial discrimination,

15  harassment, and hostile work environment applicable to each individual plaintiff against defendants."

16  (Am. Compl. at 8).  Defendants' Answer responds in kind that: "Plaintiffs' claims for harassment or

17  hostile work environment are barred, in whole or in part, because [D]efendants took reasonable steps

18  to prevent and correct the alleged wrongful conduct."  (Defs' Answer at 5, ¶Q).

19          Because this is not a summary judgment motion, the issue is not properly before the Court as

20  to whether or not Plaintiffs have enough evidence of hostile work environment discrimination to raise

21  a question of material fact on this issue.  For the purposes of this motion the Court will assume, but

22  not decide, that Plaintiffs are able to allege hostile work environment discrimination.  This approach is

23  consistent with the Federal Rules of Civil Procedure's directive that, "[a] pleading which sets forth a

24  claim for relief. . .shall contain. . . (2) a short and plain statement of the claim showing that the

25  pleader is entitled to relief. . ." Fed.R.Civ.P. 8(a)(2).  Likewise, the Court interprets the plain

26  language of Defendant's Answer to mean that Defendants have chosen to assert the affirmative

ORDER - 3

1    defense to allegations of hostile work environment.   Thus, the Court may reach the issue of how

2    claiming an affirmative defense to hostile work environment allegations impacts privileged documents

3    put "at issue" by the use of the affirmative defense.  This is an issue that has not yet been considered

4    by the Ninth Circuit.

5

6    **II.  Faragher-Ellerth and Waiver of Privilege:**

7           The Supreme Court's twin rulings in Faragher v. City of Boca Raton and Burlington

8    Industries Inc. v. Ellerth, applied agency principles to Title VII employment discrimination law and

9    created a new affirmative defense for employers facing such allegations.  In these decisions, the Court

10   held that an employer may be held vicariously liable for the creation of a hostile work environment by

11   a supervisor although the employee suffered no adverse employment action.  See Faragher, 524 U.S.

12   775, 802 (1998); Ellerth, 524 U.S. 742, 764 (1998). As a counter-weight to this holding, the Court

13   also held that an employer may assert an affirmative defense to protect it from vicarious liability if it

14   can show that it took reasonable measures to prevent and correct the situation and that the employee

15   unreasonably failed to take advantage of these measures. Ellerth, 524 U.S. at 765.

16          Whether or not asserting the Faragher-Ellerth defense puts "at issue" an employer's

17   investigation of harassment and the employer's subsequent remedial measures aimed at curtailing the

18   harassment is a question that must be answered on a case-by-case basis. McGrath v. Nassau Co.

19   Health Care, 204 F.R.D. 240, 244-5 (E.D.N.Y.  2001).  However, "where a party raises a claim

20   which *in fairness* requires disclosure of the protected communication the privilege may be waived."

21   U.S. v. Ortland, 109 F. 3d 539, 543 (9th Cir. 1997) (citing Chevron Corp. V. Pennzoil Co., 974 F. 2d

22   1156, 1162 (9th Cir. 1992).   For example, when a Defendant employer has sought to offer the fact

23   that its attorney conducted an  investigation into Title VII harassment claims as part of its defense to

24   those claims, the court in that case found that allowing attorney-client and work-product privileges to

25   bar Plaintiff's inquiry into the investigation was unfairly prejudicial to Plaintiff and effectively waived

26   the privilege.   Harding v. Dana Transport, Inc., 914 F. Supp. 1084 (D. N.J. 1996).  Likewise, this

1  Court finds Rabanco's efforts to shield the substance of its investigation into and remediation of the

2  alleged hostile work environment behind a veil of privilege while simultaneously asserting the

3  Faragher-Ellerth defense in conflict with the principles of fairness which this Court strives to uphold.

4        The parties in this case cannot agree about the extent to which Defendants' assertion of the

5  affirmative defense will compel disclosure of documents pertaining to the investigation Rabanco

6  undertook after receiving the NAACP's letter.   Many of these documents are listed in Defendants'

7  privilege logs.  Rabanco claims that because the investigations were directed by counsel, but

8  conducted by non-attorneys, in preparation for litigation, they should be protected under one of two

9  theories: either, 1) the documents are attorney-client communications that must remain confidential,

10  or 2) the documents are work product, prepared in anticipation of litigation, and may not be

11  disclosed.  Plaintiffs allege that Rabanco structured its investigations in such a way as to profit from

12  both lay and attorney investigators, hoping to avoid as much disclosure as possible.  This Circuit has

13  looked unfavorably on this strategy, noting that the attorney-client and work product privileges may

14  not be used as both "a sword and a shield."  United States of America v.Ortland, 109 F. 3d 539, 543

15  (9th Cir. 1997).  The Court will attempt to clarify for the parties what types of materials are

16  discoverable in this litigation.

17       **A.  Attorney-Client and Work-Product Materials**

18          **1.  Generally**

19        The privilege protecting attorney-client communications is the oldest privilege recognized at

20  common law.  Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).  The privilege represents the

21  courts' understanding that the most effective legal advocacy can only take place when an attorney is

22  fully informed about all of the reasons that the client is seeking representation.  Id.   Where a

23  corporate entity is an attorney's client, the U.S. Supreme Court has applied the privilege to

24  communications between the attorney and employees within the corporation whose job brings them

25  into contact pertinent to the matter being handled by the attorney.  Upjohn, 449 U.S. at 394.

26

ORDER - 5

Although not as old as the privilege protecting attorney-client communications, the privilege protecting attorney work-product is a complementary privilege that allows an attorney to gather materials and evaluate them in preparation for her client's case without the intrusion of others into her thought processes. In re Grand Jury Subpoena v. Torf, et al., 357 F. 3d 900, 907 (9th Cir. 2004). Set forth in Federal Rule of Civil Procedure 26(b)(3), the work-product privilege extends even to "documents created by investigators working for attorneys, provided the documents were created in anticipation of litigation." Id., citing U.S. v. Nobles, 422 U.S. 225 (1975). The Ninth Circuit has held that in order to qualify for 26(b)(3) protection, work-product documents must be both prepared for litigation or for a trial and prepared "by or for another party [to the litigation] or by or for that other party's representative." Id., quoting In re California Pub. Utils. Comm'n, 892 F. 2d 778, 780-1 (9th Cir. 1989).

Together, both of these privileges serve as a cornerstone for our society's adversarial process. They allow a client to be entirely candid with his attorney and they ensure that an attorney's opponent will not profit from the fruit of the rival attorney's labor. Upjohn, 449 U.S. at 389, 396. Nonetheless, in order to remain useful while avoiding overbreadth, both of these privileges must be construed as narrowly as possible. Dana, 914 F. Supp. at 1091. The burden of proof is on the party asserting the privileges to show that the material at issue merits protection. Id. at 1089-90. Further, courts must guard against the potential abuse of these privileges to ensure a fair and just system of evidentiary discovery. Courts must remain vigilant that the privilege of confidentiality not be used as a "tool for manipulation of the truth-seeking process." Id. at 1092.

### 2.  Applied to this case

Courts in the Ninth Circuit have employed a fairness balancing test to determine when a party's asserted privilege must be waived. In Ortland, the Ninth Circuit affirmed a District Court's decision to let Defendant's attorney testify when part of the defense's theory was that Defendant had relied on his attorney and had been unaware that his actions were illegal. 109 F. 3d at 543. The Ninth Circuit ruled that in fairness to the prosecution, the Defendant's attorney-client privilege had been

ORDER - 6

1  waived because the Defendant had put these communications at issue.  Id.  Similarly, in EEOC v.

2  General Telephone Co. Of the Northwest, the Ninth Circuit decided that an employer implicitly

3  waived the privilege concerning self-critical analysis when it chose to use evidence of its affirmative

4  action policy at trial after it had claimed the self-critical analysis privilege earlier in the litigation to foil

5  discovery on that issue. 885 F. 2d 575, 578 (9ᵗʰ Cir. 1989).   The situation in this case is similar to

6  that in both Ortland and General Telephone.  Like the defendants in those cases, Defendant Rabanco

7  is voluntarily choosing to assert an affirmative defense while attempting to keep documents germane

8  to the affirmative defense out of the hands of its opponent through the use of privilege.

9        Other courts have found that where a party asserts a privilege, the privilege is put at issue by

10  the party claiming the privilege, and the application of the privilege would deny the opposition of vital

11  information, the privilege is waived.  Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975).  This

12  Court finds that all three of these criteria apply to the case at hand.  Defendants have claimed a

13  privilege.  To prevent itself from incurring vicarious liability for the actions of its supervisors,

14  Defendant has decided to show that it took appropriate investigatory and remedial measures to

15  prevent and correct the alleged racially hostile work environment that Plaintiffs claim Rabanco's

16  supervisors created.  Ellerth, 524 U.S. at 765.  Assertion of this defense puts Defendants' claimed

17  privilege at issue.  Finally, application of the privilege will deny Plaintiffs of vital information because

18  Defendants will seek to admit evidence at trial concerning their investigation into this matter without

19  first having allowed Plaintiffs, during discovery, to make an inquiry into the adequacy of the

20  investigation to address the racial discrimination that Plaintiffs experienced.   This strategy is patently

21  unfair and would defeat one of the goals of our adversary system by leading the fact-finder to a

22  lopsided version of the truth.

### a. Discoverable Material

24       In order to prevent such an outcome, Defendants must turn over any documents to Plaintiffs

25  pertaining to Defendants' investigations that took place between 2000 and 2004 into allegations of

26  racial discrimination.  It does not matter if these investigations were directed by, conducted by, or

1    supervised by attorneys.  Any and all documentation concerning the gathering of facts regarding

2    allegations of a hostile work place must be turned over because, in asserting the affirmative defense,

3    Defendants have waived all privilege protection for these documents.  Likewise, Defendants must also

4    turn over any documentation describing or implementing any remedial program undertaken as a result

5    of these investigations.  The assertion of the affirmative defense also opens the door to these issues

6    and waives any privilege that might have shielded these documents.

7                                   **b.  Decision-Making Exception**

8           The only exception that this Court will recognize to this discovery is an exception that is

9    rooted in Federal courts' traditional respect for opinion work-product.  Other federal courts have

10   recognized opinion work-product as "virtually sacrosanct" and not to be disclosed unless there's a

11   highly persuasive showing of need.  McGrath, 204 F.R.D. at 243-4.  This Court agrees that an

12   attorney's analytical process must be protected.  For this reason, the Court will not require

13   Defendants to turn over any documents that were created by attorneys to help them evaluate the

14   results of the investigations in preparation for speaking with Rabanco's decision-makers about the

15   legal implications of the various remedial courses of action available to them.  Likewise, any notes or

16   documents produced during meetings between Rabanco's attorneys and its decision-makers to decide

17   what remedial course of action to take shall remain privileged.

18          The Court recognizes that the Supreme Court in Upjohn rejected as too unpredictable the

19   "control group" approach to corporate privilege that is used in some jurisdictions because questions

20   of who is within the "control group" continuously arise. 449 U.S. at 393.  This Court's decision-

21   maker approach is distinct from the "control group" approach because it does not seek only to

22   include Rabanco's corporate executives.  In fact, the Court recognizes that probably not all of

23   Rabanco's corporate executives were involved in making a decision about how to most effectively

24   repair the allegedly hostile working environment in Seattle.  Additionally, some people not in the

25   "control group" might have taken part in these decisions.

26

ORDER - 8

In order to keep privileged documents created for or during discussions between Rabanco's attorneys and members of the decision-making group confidential, Defendants must first alert Plaintiffs who the members of the decision-making group are.   These decision-makers will only be those individuals who were responsible for the decision to change policy in response to hostile work environment allegations–those merely responsible for implementing the changes may not be included as "decision-makers."  The Court cautions Rabanco that including the whole of its Human Resources Department as "decision-makers" will not be looked upon favorably by this Court.  Further, the Court instructs  Defendants that only those documents pertaining to meetings with decision-makers where change of policy regarding the hostile work environment at Rabanco was addressed may be withheld.

Pursuant to these instructions, Defendants shall review their privilege log and turn over to Plaintiffs any documents pertaining to the hostile work environment investigation or remediation efforts between 2000 and 2004.  The only documents which may be retained are those that were prepared for or during decision-making discussions with members of the decision-making group regarding the hostile workplace program.  Defendants shall make these additional disclosures within fifteen (15) days of this Order.  If Plaintiffs are satisfied, after this disclosure, that Defendants have acted in good faith and fulfilled their discovery obligations, then the matter will be at an end.  If, however, Plaintiffs are not satisfied and believe that Defendants have not made the disclosures required of them, they may request that the Court appoint a Special Master to review all of Defendant's privilege log documents *in camera*.  The Plaintiffs shall notify the Court of this request within thirty (30) days of receiving Defendants' additional privilege log disclosures.  If a Special Master is appointed, the parties shall bear the costs for the Special Master in proportions that will be determined by the Court depending upon the outcome of the Special Master's document review.

### III.  Certification for Immediate Appeal

The Court notes that Defendants have asked this Court to certify this issue for immediate appeal to the Ninth Circuit.  The Court declines to certify an appeal at this time because it does not believe that the issue is ripe for appeal until the parties have made a good-faith effort to comply with

ORDER - 9

this Order.   The Court instead directs the Defendants to review their privilege log and comply with the Court's instructions pertaining thereto.  Only after the Court is convinced that a good-faith effort has been made on the part of Defendants and an agreement between the parties cannot be reached will the Court re-entertain the issue for certification of appeal.

### IV.  Re-setting of Deadlines

Finally, the Court notes that it has taken longer than usual in deciding this issue.  Because of this delay on the Court's part, the Court will entertain a joint proposal by the parties to re-set discovery and all other pending trial dates.  The parties should file a joint status report to this effect with the Court within thirty (30) days of this Order.

The Clerk of the Court shall direct a copy of this order be sent to all counsel of record.

Dated: February 15, 2005

/s/ Marsha J. Pechman_____
Marsha J. Pechman
United States District Judge

ORDER - 10