1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANDRE JONES , et al., | Case No.: C03-3195P |
| Plaintiff(s), | Special Master's Report Regarding Faragher-Ellerth Discovery |
| vs. | |
| RABANCO, Ltd., et al., | |
| Defendant(s). | |

Preliminary Matters

The undersigned Special Master received this matter on or about July 5, 2005 for review pursuant to the Court's "Order for Submission of Corporate Defendants' Privilege Log and Documents to a Special Master" of June 15, 2005. I have received and reviewed the following documents:

1) The Court's Orders of February 15, 2005,  March 3, 2005 and June 15, 2005

2) Letter of June 17, 2005 from Rebecca Dean to Michelle Nemeth

3) Letter of June 27, 2005 from Rebecca Dean to myself, with attachments

4) July 1, 2005 letter from Peter Moote objecting to the prior letter.

5) July 7, 2005 letter from Peter Moote with attachments

6) July 15, 2005 letter from Peter Moote

7) July 18 letter from Rebecca Dean

8) Four (4) large notebooks containing the allegedly privileged documents

9) Allied Waste Privilege Log , 95 pages, printed June 27, 2005

10) 90 page blank spreadsheet for my convenience for tabulating the results of my review of documents.


In addition I had a telephone conference with counsel, Peter Moote and Rebecca Dean on July 6, 2005 concerning the letter of June 27, 2005 and Mr. Moote's objection thereto. I determined that it was not inappropriate for me to consider the June 27th letter and have done so, along with the follow up objections and responses by Mr. Moote and Ms. Dean. It was my determination that the letter, and the organization of documents it reflected, assisted me in my review of the documents and did not improperly ask me to reconsider the rulings previously made by Judge Pechman. Had the documents been presented to me in the order that they appeared on the privilege log, without any orientation, it would have been extremely difficult, and extraordinarily time consuming for me to determine what the documents were and how they related to one another. I made my own determinations from inspections of each document if they indeed were as represented. I conducted my review by means of a thorough inspection of each document as it appeared on its face and as it appeared to be related to contemporaneously created documents.

Organization of this report

The documents were presented to me in an order that differs from the order in the privilege log. It was easy to go from the documents to the privilege log, but not at all easy to go from the privilege log to the documents. The privilege log itself is not chronological but the documents in the volumes and on the spreadsheet are in part chronological and arranged in categories of related matters. The spreadsheet organization matches the order of the documents in the four volumes. The letter of June 27th explained the organization of the documents. In addition Rabanco prepared for my use a spreadsheet format listing each document and spaces for my determination of whether or not the document should be protected. I have found that spreadsheet to be very useful in keeping track of my review and will use it as part of this report to tabulate the results of my review. I wrote "no" on the spreadsheet regarding a document that I recommend be produced.  Therefore there are three aspects to this report.

1)  A narrative report, beginning below. The narrative is organized by volume. There were 4 large volumes presented for my review. In the narrative I explain why I recommend that particular documents in each volume be protected or disclosed. I don't discuss each document, but rather discuss documents of a similar type and that have a similar rationale for protection or disclosure. To actually identify the documents that I recommend be produced one must go to the spreadsheet attached as Appendix A, or the Proposed Order. On the spreadsheet I note whether a document is to be produced or not, along with a code number that relates back to the narrative report for the explanation of why it is deemed discoverable or not.

NOTE: there is one major issue that the court needs to particularly address, that is not clearly delineated by the previous orders, that pertains to settlement documents. I discuss that further below.

The purpose of the narrative is to provide the court with an overview of rationales. It would not be necessary to refer to the spreadsheet unless the court wishes to look at examples, and do spot checking, or does not agree with the rationales. There are one or two instances that I wish to draw the court's attention to for specific determination. Those are noted below in the narrative.

2)   The Spreadsheet with the particulars as to each document's protected status per my recommendation. Also noted on the spreadsheet is a coded number relating to the explanations in the narrative report.

3)   A Proposed Order that lists, just by number, the documents to be produced.

Narrative Report

Overall I found that the majority of the documents have been properly withheld from discovery. Many of the documents are duplicates, or near duplicates. Numerous documents were clearly classic attorney client communications soliciting or giving advice. Others were documents containing attorney impressions, or things such as bills from outside counsel regarding services in contested cases. One of the difficulties in reviewing the documents was that a great many were "e-mail strings" where each new recipient adds a comment to an ongoing

discussion, each of which had to be evaluated for potential protection, as attorneys were at times in the distribution.

There were, however, some clear situations in which documents have been withheld that should not have been. One example of that is the report, prepared by Rabanco personnel (not attorneys) of the investigation and recommendations coming out of the July-August, 2003 investigation. There were numerous drafts of this report, eventually referred to as a "white paper." I am not aware of whether or not the final report was previously disclosed, but it certainly should be, along with the various drafts that preceded the final. There is no indication in the court's order or prior legal authority that "drafts" could be exempted from disclosure.

Another example of inappropriate non-disclosure is of fact-gathering information that is attached to a cover sheet and sent to or from an attorney with some attorney/client protected communication on the cover sheet. Although the cover sheet may be protected, the attached documents should not be. In some cases Rabanco did redact the cover sheet communications and produce the attachments, in other cases it appears they produced none of the attachments.

Settlement documents

There is a legitimate issue for debate over a certain class of documents that I will refer to as settlement documents. These appear in Volume III. In that volume there are numerous documents that reflect in-house proposals, and discussions about potential settlements with various individuals on the list of NAACP complainants. Attorneys had some, but not much input into these discussions (until it came time to draft the settlement agreements). In some instances

there is attorney advice incorporated in the recommendations, but most of these documents emanate from the corporate decision makers. The main issue for determination by the court is whether or not settlement discussions should be protected, an issue not addressed in the court's order. There is a good faith argument from Rabanco's point of view that these documents, reflecting settlement strategizing, are not really internal remedial measures at all but after the fact specific implementations of a more general remedial plan.

On the other side of the issue, plaintiff's can argue that settlements prior to litigation are in fact part and parcel of the "remedial" efforts emerging from an internal investigation. They are the remedy that flows from the investigation and without which an investigation is meaningless. There is no logical reason from this point of view why individual remedies should be distinguished from "remedial plans" designed to prevent problems in the future. Considering the broad sweep of the language in such authority as there is regarding the Faragher-Ellerth defense, it is my conclusion that these documents should be disclosed. However, this may be beyond the scope of my charge as special master and the court needs to directly decide this issue.

I have noted below in the discussion of Volume III where this issue arises, and how the court can change my recommendations if it disagrees.

## **VOLUME I**

The documents in Volume I are those that Rabanco says are not internal investigation documents but rather relate to existing or threatened litigation with outside agencies. These matters do not stem from AWARE line or other "internal" complaints or the

NAACP letter but relate to other outside agency complaints. Although internal investigations were conducted in order to respond to the complaints, these would seem to fall outside the Faragher-Ellerth (hereinafter, F-E ) defense related to the utilization of in-house complaint procedures and processes. In general I agree with Rabanco's characterizations in this volume with a few minor exceptions. (If the internal investigation of outside agency complaints is, however, considered fair game for discovery under the F-E defense, another basis for protecting these documents would be that these investigations all post date the actual complaint to the agency and would be analogous to documents created post 10/24/03, (i.e. created after the filing of "litigation" with an agency). I assume therefore that the following qualify for work product and attorney/client privilege protection and don't pertain to a F-E defense because they arise in connection with complaints made to external agencies requiring response and defense ( regardless of the date):  NLRB, EEOC, Washington Unemployment, King County Metro EEO, DLI, Seattle Office of Civil Rights, and Union Grievance Arbitration claims. Therefore the documents in this volume were reviewed under the usual privilege standards, and not the more stringent standards pertaining to the F-E defense.


The documents fall into approximately 6 different categories which I discuss below, along with my recommendation for each, as explained above.


Volume I -1

These documents are deemed not to be work product. For example there are documents where the client says (to the attorney)," here are the documents, or information, that you asked for," in a cover sheet and attaches what appear to be previously prepared business

records (such as documents from an employee's personnel file, payroll data, monthly reports regarding missed garbage collections and the like). Although the cover sheet to the attorney would be protected attorney/client communication, the attached business records should be produced. CAVEAT: It maybe that these business records were otherwise produced.

Recommendation: These documents to be produced.


Volume I-2

In some cases information forwarded to the attorney appears to have been actually prepared or compiled (from other underlying documents) by the client at the attorney's request.

Recommendation: These should be protected work product.


Volume I-3

These documents are forwarding cover sheets and attached outside documents, such as final agency determinations of the OCR, EEOC, etc. either to or from the attorney. The forwarding sheet should be protected as it often has a comment that would be confidential attorney/client communication, but the attached documents would not be protected..

Recommendation: Produce the attachments of these documents, but protect the forwarding cover sheets.


Volume I-4

These are draft settlement agreements, or draft letters and documents prepared by an attorney and qualify as attorney advice even if the final signed document might be discoverable.

<u>Recommendation:</u>  Protect

Volume I-5

This is a series of documents that could be considered corporate business records or fact gathering. Rabanco calls them "analytical" and "work-product." They are spread sheets, prepared by in-house counsel called "quarterly reports" for the corporation of pending matters being tracked by in-house counsel, from court litigation to union contract negotiations. The spread sheets include the status of the matter, whether or not assigned to an attorney, budgeted amount, fees paid to date, resolution status, etc. There is no actual analysis of any specific case, (unless the "budgeted" amount reflects an assessment of risk). However, these reports do reflect the attorney's consideration of what matters merit "tracking" by counsel.

<u>Recommendation:</u> Protect these documents as attorney work product.

Volume I-6

These are numerous documents that are classic attorney/client communications or work product of an attorney.

<u>Recommendation:</u> Protect

<u>Conclusions.</u> Most of the documents in this volume are properly withheld. Those that I recommend be produced are as follows:

a) 00079-90. Business records sent to the attorney.

b) 00024-25. Gosby payroll records sent to attorney.

c) 0001475: Notes from an 11/1/00 in house manager witness interview regarding

termination of Gosby, after Gosby requested "assistance in addressing and resolving my concerns" At that time the Gosby request is not deemed to have been a threat of litigation, although later such a threat emerged.

d) 00028-29. Documents from Tim Harris personnel file.

e) 00116-121. Andre Jones complaint to Seattle OCR and OCR's request for information.

f) 00129. Letter sent to the City.  As it is signed it does not appear to be a draft.

g) 00107-00198, 00110, 00112-114. City's findings in the Jones case, without cover sheet.

h )00170-175. EEOC document sent to Rabanco in the Montalvo matter.

i) 00147-8, 00054-55.  EEOC finding and Notice in the Montalvo matter.

j) 1638-40. Documents from Carl Passamore file.


Conclusion

The bulk of documents in this volume are properly protected as attorney/client or work product documents. The few exceptions are rather trivial and/or for the most part are or have been available to plaintiffs from other sources. I see no attempt to inappropriately shield documents other than perhaps c) above. However, there was a good faith argument that the initial Gosby letter did amount to a threat of litigation. Therefore I find no basis for a disproportionate award of fees relating to these documents.


**VOLUME II**

Volume Two contains documents that all pertain to the internal investigation. There are ten (10) differing types of documents which will be described in the categories below. Many of the documents contain what I presume would be confidential employee personal data regarding non-plaintiff employees. For example it appears that some documents include information on employees who were terminated or disciplined, and why. Some of those employees are plaintiffs or those referred to by the NAACP letter, but the lists appear to include all employees. Although the information would be important in an investigation to determine whether or not there was disparate treatment of particular individuals, the information remains sensitive in regards to non-complaining persons. For those documents of this nature that are to be produced, non-complaining (either through the NAACP or as plaintiffs or otherwise) employee confidentiality should be protected by redacting names only (not the other data re ethnicity, reasons for discipline, etc.) and replacing the names with a code. Redaction should not be made for those employees with the responsibilities that plaintiffs are complaining about – such as plaintiffs' supervisors and managers. From inspecting the documents, some of which are handwritten and difficult to read, this redaction job will entail considerable difficulty. I have marked with an asterisk on the Proposed Order those documents that need this name redaction. I also have flagged in the black volume two examples for the court's closer inspection. (Documents 0689 et.seq. & 0373 et seq.)

Below are the recommendations associated with the numbered categories from the summary spreadsheet.

Volume II-1.

These documents contain attorney advice on how to proceed and/or a client request for advice on how to proceed. The advice relates to legal issues, not to directions on how to conduct the investigation(s).

<u>Recommendation:</u>  Protect these documents.

Volume II-2

These documents contain a cover sheet sent to an attorney with attachments of facts, data, and information. There is no attorney evaluation or advice nor request for same on the attachments. The cover sheet could be interpreted as revealing attorney thought process and should be protected. However, the attachments are part of the fact gathering and are either already existing business records, or material compiled from existing records.

<u>Recommendation:</u>  Protect the cover sheets, but produce the attachments.

Volume II-3

This category of documents consists mostly of e-mail strings about what is going on in the investigation, sent to attorneys and corporate managers and decision makers. There is a lot of chit-chat about who is going to do what, communication of "thanks," with an occasional piece of protected attorney evaluation, advice or question to an attorney for advice. There are many duplicate e-mail strings so that the protectable item is contained within a long string of otherwise discoverable correspondence. However Rabanco can easily redact the protected part and I have noted in the summary spread-sheet what particular item may be redacted.  The bulk of the correspondence consists of attempts to locate certain material germane to the investigation.

<u>Recommendation:</u>  Produce except as noted for redaction.

Volume II-4

These are e-mail strings with requests for attorney advice regarding potential and actual outside adverse actions against the company (not involving employees). These documents are not part of the investigation per se, but concern potential other legal ramifications from the NAACP letter.

<u>Recommendation:</u>  Protect these documents.

Volume II-5

These are documents of data which were either specifically compiled and created for the investigation, or are a copy of pre-existing business records, or are documents obtained from outside the corporation. Rabanco says they are analysis and work product, however they were authored by non-attorneys. An example is "analysis" of past terminations on the basis of ethnicity prepared by non-lawyer corporate individuals. Although these are lists of names they all appear to be of individuals who complained at one point or another and need not be redacted.

<u>Recommendation:</u>  These documents should be produced.

Volume II-6

These documents are drafts by attorney(s) of a response letter to the NAACP and comments by corporate decision makers on the drafts. These represent classic attorney advice to the client on how to respond to an outside inquiry. The comments by decision makers, although

generally trivial, would also be protected as the corresponding "yeah" or "nay" by the client to attorney advice. There are many duplicates, or near duplicates, merely sending the same drafts to different people for input.

Recommendation:  Protect these documents


Volume II-7

These documents reflect plans for the investigation, things to do lists and the like. They appear to be exactly the type of document that is contemplated to be turned over by the court's order.

Recommendation:  Produce these documents.


Volume II-8

These are proposed questions for the investigation interviews including organization charts and lists of proposed interviewees with why each person might be of interest. There are initial and pared down lists. This is squarely part of the fact gathering process and contains no attorney evaluation or advice.

Recommendation:  Produce these documents with the following CAVEAT: these documents reveal the names and disciplinary actions regarding some employees who may not be individuals who ever complained about discrimination or hostile work environment or other "issues." This is likely protected private personnel data of the employees in question. Therefore they should be produced with names of non-complaining individuals redacted and replaced with code numbers, while keeping a list of the employee names and the corresponding numbers.

Volume II-9

These are spreadsheets, drafts, duplicates and different iterations of data prepared by corporate manager(s) displaying various employment disciplinary actions, containing names, dates, action taken, ethnicity, job type, outcome, etc. Clearly this is fact gathering within the court's order, but suffers from the same problem as the prior category in that identifies by name non-complaining individuals and their sensitive private employment disciplinary actions.

Recommendation:  Produce these documents in redacted form as to non-complaining individuals with names replaced by code (preferably numbers)


Volume II- 10

Lists and spreadsheets of data regarding persons hired, separated or terminated over time. Some of this looks like records kept as part of an affirmative action plan or similar record keeping. Again, it may be considered to contain sensitive personnel data in that it identifies individuals by name and reason for separation from the company.

Recommendation:  Produce, with names of non-complaining individuals redacted and replaced with code numbers or letters, consistent with other lists. (If Joe Jones shows up on one list and is redacted to be "10" on that list, he should also be "10" on these lists.)


Conclusion

This volume contains quite a few documents that should be produced, although some in redacted form to protect the privacy of non-complaining employees, pursuant to the court's order. There does not appear to be a reasonable argument for not producing these documents under the court's order, which is perhaps why the volume is entitled documents "arguably

pertaining to in-house investigations." Seven of the ten categories are documents that should be produced in whole or in part. Failure to so produce them reflects disagreement with the court's order, rather than a belief that they were within the scope of the order's protection. There is a basis for a disproportionate award of fees in relation to the documents in this volume.

## **VOLUME III**

Almost all of the documents in this volume relate to the internal investigation of Rabanco and therefore should be produced under the court's order unless they fall within the narrow exceptions for attorney evaluation and advice. However there is the threshold question discussed above that needs to be addressed pertaining to settlements.

Arguably an individual settlement is a part of the remedial process. If in the course of the investigation the corporation determined that one or more individuals were wronged in some way and offers to "settle" with those persons the settlements rather clearly seem to be a remedy emanating from the investigation. On the other hand a settlement with a particular person is not a "remedial plan" that addresses the institutional issues that lead to the problem (such as poorly supervised supervisors, lack of sensitivity training, lack of accountability, etc.) and such individual settlements could be considered not to be the type of remedial measures contemplated by the courts as part of the F – E defense. In this light, settlements would be seen as the individualized implementation of a general remedial scheme. This view however seems somewhat strained. I did not find case law that specifically addresses this issue, but after considering the fairly broad sweep of language in cases such as <u>Harding v. Dana Transport, Inc</u>., 914 F.Supp. 1084 (1996) it is my conclusion that the better analysis requires settlement planning and proposal documents should be disclosed. This matter however is for the court to determine,

particularly in light of the normal public policy reasons for protection of settlement discussions and documents.

If the court determines that individual settlement discussions and strategizing should be within the scope of discoverable remedial actions then there would be no basis for distinguishing between drafts, proposals, and final settlement terms. On the Proposed Order I have bracketed those documents that pertain to settlements and if the court determines that such documents need not be disclosed then it is a simple matter to cross them off the Order.

Again, I have grouped my analysis of the documents into various categories, and coded them on the attached spreadsheet to correspond to the categories below.

Volume III – 1

These documents are drafts of a report and recommendations for change stemming from the investigation of the NAACP complaint. The drafting starts August 19, 2003 and ends around October 20th. There is no indication from the face of the documents that any attorney wrote any of the drafts, or portions thereof, or commented on them. The report covers hostile work environment issues, discriminatory treatment issues as well as general business issues. The issues are intertwined and arguably all relate, indirectly as well as directly, to the hostile work environment issue such that redaction of non-hostile work environment issues would be difficult at best if not impossible.  I have flagged one or two of these documents and the court may specifically wish to review them.

Recommendation These documents should be produced

Volume III – 2

These documents are notes and requests for attorney assistance and attorney advice regarding the termination of certain supervisors. These documents consist of the implementation of a remedy, i.e. termination of supervisors, and asking for attorney advice concerning the termination interviews. That such terminations took place is certainly discoverable, but the mechanics of how it was done, and the attorney advice in connection therewith is both beyond the scope of the court's order as well as falling within the protections delineated by the court.

Recommendation:  These documents may be protected

***Volume III – 3

These are the spreadsheets, and drafts of recommendations for settlements with particular individuals, identifying name, issues, status and various suggested resolutions of the NAACP complainants.  Some of the claims related to hostile work environment, others to claims of unfair terminations and the like. They are the first step in what presumably led to settlement negotiations with specific individuals. These represent internal discussion about what offers should be made to specific individuals to address their concerns. I have flagged one of these for the courts' review (doc.0000601).

Recommendation:  For the Court's determination, but recommend that they be disclosed.

Volume III – 4

These are draft settlement agreements prepared by attorney(s) and as such represent attorney advice.

Recommendation: Protect these documents

(Notations 5 & 6 were deleted as duplicative, but remaining numbers need to stay the same to correspond to the summary sheet.)

***Volume III – 7

These are e-mail strings regarding terms of certain individual settlements, discussion & opinions regarding what to offer or not to offer. This includes the settlement strategy in a case of discharge, including some attorney comments. Also there are string of e-mails to attorneys and among managers requesting assistance in drafting settlement agreements for 4 terminated employees and 3 hostile work environment claims. They include attorney advice on wording of the agreements, and discussions regarding terms to offer in settlement. For the court's convenience I have flagged one of the documents (doc. 1303-09).

Recommendation:  Disclose these documents except for those that ask for and reflect attorney advice. I have marked documents with attorney advice "7a" on the summary sheets. CAVEAT: As with 3 above, the court needs to determines whether or not internal discussions regarding settlements should be produced. These documents have been segregated on the Order sheet for easy redaction if the court so chooses.

Volume III – 8

Specific legal advice or attorney client communication.

Recommendation:  Protected documents

Volume III – 9

Attorney draft agreements, with some e-mail string questions for clarification.

<u>Recommendation</u> Protected documents

Volume III – 10

Documents reflecting internal investigation and/or corporate analysis, not on their face the evaluation or analysis of an attorney.

<u>Recommendation:</u> These to be produced.

<u>Conclusion</u>

Whether or not to produce the settlement related documents is a fairly disputed issue. However, a key series of documents, which are those relating to the report of the investigation and recommended remedies, (category 1 & 10 above) are documents clearly falling within the court's order to produce, that have been improperly withheld. These do not appear to be trivial omissions. One portion was withheld on the claim that it reflected "communication with counsel" however that is not reflected on the face of the document (see Document 1466, flagged). There is a basis for a disproportionate award of fees relating to documents in the volume.

## **VOLUME IV**

These are all documents that Rabanco claims were created after October 24, 2003. Plaintiff challenges only 3 of the documents in this volume. Plaintiff claims that the three documents it challenges were in fact created before the cut-off date. It was necessary to review a number of the other documents in the volume in order to resolve the "date of creation" issue. I also reviewed the entire volume in a more cursory manner to confirm that the remainder of the

unchallenged documents did indeed appear to be litigation-related and created after October 24th. I have yellow tagged the three challenged documents in the volume so that the court can find them easily.

Doc. IV-00218-00233:  This appears to be a computer generated spreadsheet that tracks and compiles all AWARE line calls and the status of the follow-up to each call. Some entries post-date 10/24/03 whereas others state that they were "closed" prior to 10/24/03 (some were closed as early as 2001). This looks like a record kept in the ordinary course of business and something that was not just created in response to the litigation, although this particular iteration was printed out after the cut-off and includes post cut-off data. There is no evidence either on the face of the document or from other documents that there was any post 10/24/03 direction to create it from scratch. This document presents an interesting issue because it is not clear that any print-out of the material stored in the computer was actually done prior to the cut-off. Is material in a computer considered a "document?" I presume it is.

Recommendation: Order that this document be produced with entries that post-date 10/24/03 redacted; or in the alternative that defendant, by affidavit from a person with knowledge, confirm that the entire document was compiled and prepared (not just printed out) after the cut-off.

Doc. IV-00245-00246:  This is a two page summary of the summer, 2003 investigation. It would be protected only if it was truly written after the cut-off. However there is no date on it. This same document appears later (with some editing changes) as the first two pages of a larger report that was written and put together after the cut-off (doc. 001541). I cannot tell if this document was drafted prior to the cut-off and then used later as part of the larger report, or if it

was indeed drafted post cut-off. The privilege log alleges that it was drafted 12/01/03, but that date is unlikely as that is also the date alleged for the creation of the final 74 page report (doc. 01538-01611, see below), which was a work in progress during November 2003. It is possible that it was drafted as the "introduction" for the big report.

<u>Recommendation:</u> Order that it be produced unless Rabanco submits an affidavit by the preparer that it was prepared post 10/24/03.

Doc.IV- 0001538-0001611:  This is a formal report of the Workplace Investigation of July-August 2003. From reading the various other documents, especially e-mails, in this volume it is clear that this was indeed prepared post 10/24/03 in preparation for the litigation. It includes "write-ups" of the interviews conducted in the summer. The prior e-mails in the volume show that these write-ups were being prepared in November. These write-ups must have been prepared from notes made at the time of the interviews, but these notes are not included in Volume IV, or in the other documents on the privilege log, and may have been already produced (or not?).  In any event, I am satisfied that this document was indeed created after the litigation, even though it may have relied upon and incorporated work that was done earlier. I have already recommended that at least one of the earlier documents be produced (Doc. III-01119-01129 especially).

<u>Recommendation:</u>  This document is protected and need not be produced.

<u>Conclusion</u>

In general these documents were properly withheld.  With proper certification at least two of the above are likely to be protected. My only serious concern is with the first document above, the bulk of which appears to have been created prior to the cut-off but is being shielded because

of the inclusion of new material added after the cut-off. There doesn't appear to have been an attempt to redact the material that post-dates 10/24/03, which attempt should have been made. For this reason there is a basis for a disproportionate award of fees in regards to this volume.

## ATTORNEY FEES

Approximately one-third of the documents on the privilege log are recommended for production.  Although there is an arguable basis for withholding the settlement related documents, this is counterbalanced by an apparent attempt to shield clear investigation-related materials.  There appears to have been very little attorney involvement in the investigation itself other than a general direction to characterize the investigation as done at the direction of counsel. Almost all the work was done by corporate employees with counsel being consulted only for specific and discreet pieces of advice.  Given that the court's order only exempted from production documents that replaced actual attorney advice and analyses, it was inappropriate to continue withholding many of these materials after the court's order of February 15, 2005. Therefore, I recommend that a disproportionate award of fees be made.  I understood the court to intend that Special Master fees be split 50/50 if there was basically no improper withholding of documents.  As approximately one-third of the documents are recommended for production, defendants should pay 67% of the fees.

Dated this 3rd day of August, 2005

_____
Hon. J. Kathleen Learned (Ret.)