1

2

3

4                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
5                             AT SEATTLE

6

7     ANDRE JONES, et al.,
                                                 No. C03-3195P
8                          Plaintiff(s),
                                                 ORDER GRANTING IN PART AND
9     v.                                          DENYING IN PART
                                                 DEFENDANTS' MOTION FOR
10    RABANCO, Ltd., et al.,                      SUMMARY JUDGMENT AS TO
                                                 PLAINTIFF PASCUAL
11                         Defendant(s).          MONTALVO'S CLAIMS

12

13          This matter comes before the Court on Defendants' Motion for Summary Judgment

14    Dismissing Claims of Plaintiff Pascual Montalvo (Dkt. No. 318).  Having considered Defendants'

15    Motion, Plaintiff Montalvo's Opposition, Defendants' Reply, Plaintiff's Supplemental Declaration,

16    Defendants' Surreply, and all other documents and papers pertinent to this motion, the Court

17    GRANTS Summary Judgment as to Plaintiff Montalvo's Disparate Treatment, Violation of Public

18    Policy, Negligent Supervision and Training, Outrage, and Negligent Infliction of Emotional Distress

19    Claims and DENIES Summary Judgment as to Plaintiff Montalvo's Hostile Work Place and

20    Retaliation claims.  Regarding the evidentiary issues raised by Defendants, the Court GRANTS

21    Defendants' Motions to Strike the testimonial affidavits of Mr. Moote and the expert report of Ms.

22    Bonnell.  The Court DENIES Defendants' Motions to Strike Mr. Montalvo's and Mr. Ortiz's

23    affidavits

24

25

26

ORDER - 1

BACKGROUND

Plaintiff Pascual Montalvo is one of fifteen Plaintiffs in this action.  He started working at Rabanco, now a subsidiary of Allied Waste, in 1996. He worked as both a garbage truck driver and a swamper.[1]  For the first several years that Mr. Montalvo worked at Rabanco, he claims that he had an excellent record as a driver. (Montalvo Decl. at 2).  In April, 2001, Mr. Montalvo had four separate accidents and was terminated from his job the next month.  Mr. Montalvo alleges that he was subjected to racial slurs at work such as, "Speedy Gonzales," which he heard on a regular basis, and "Mexican." (Montalvo Dep. at 135-37, 143-44).  Mr. Montalvo states that he did not complain about these remarks because he was afraid of what might happen if he did.  (Montalvo Dep. at 136-37). Additionally, Mr. Montalvo alleges that he experienced discriminatory treatment because of his race. He alleges that white workers, who also had a high number of accidents, were not fired while he was. Moreover, he alleges that the accidents he had were not his fault, but were the result of new trucks that the company bought, which were too large to fit into many of the alleys on his route and the fact that management was pressuring its drivers to drive with overweight loads.  Mr. Montalvo also notes that although he made a settlement through the union to be rehired because the accidents were not his fault, Rabanco retaliated against him by failing to rehire him after he had recovered from the accident. Mr. Montalvo believes that this occurred because he helped to organize workers to sign the complaint letter to Mr. Van Weeldon and that he was retaliated against for his activism. Mr. Montalvo alleges that both he and his family have suffered emotional damage because of his experiences at Rabanco.

ANALYSIS

**I. Summary Judgment Analysis**

This matter is before the Court on Defendants' motions for summary judgment.  Summary judgment is not warranted if a material issue of fact exists for trial.  Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996).  The underlying facts are viewed

---

[1]   A swamper is the assistant who walks alongside the garbage truck and puts the cans of trash into the back.

1  in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co. v. Zenith

2  Radio Corp., 475 U.S. 574, 587 (1986).  "Summary judgment will not lie if . . . the evidence is such

3  that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby,

4  Inc., 477 U.S. 242, 248 (1986).  The party moving for summary judgment has the burden to show

5  initially the absence of a genuine issue concerning any material fact.  Adickes v. S.H. Kress & Co.,

6  398 U.S. 144, 159 (1970). However, once the moving party has met its initial burden, the burden

7  shifts to the nonmoving party to establish the existence of an issue of fact regarding an element

8  essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex

9  Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  To discharge this burden, the nonmoving party

10  cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for

11  trial.  Id. at 324.

12  ### II. Evidentiary Issues

13  Before ruling on the substance of Defendant's motion to dismiss Mr. Montalvo's claims, the

14  Court will first address the materials submitted by Plaintiff in support of his case that Defendants ask

15  to be struck.  Proceeding in this manner allows the Court to rule on the evidentiary value of the

16  documents offered as evidence before considering them in the legal analysis of Mr. Montalvo's

17  claims.

18  ### A. Montalvo's Declaration and Deposition

19  Defendants claim that Plaintiff's deposition testimony and declaration contradict each other

20  and that Mr. Montalvo's declaration contains technical opinions that Mr. Montalvo is not authorized

21  to give, as well as hearsay statements. Defendants ask the Court to strike the declaration.  The Court

22  will allow both deposition and declaration to serve as evidence, reducing the weight it gives to the

23  affidavit if it finds any inconsistencies.  Minor inconsistencies between deposition testimony and an

24  affidavit will not provide a basis for excluding the affidavit. Leslie v. Grupo ICA, 198 F. 3d 1152,

25  1158 (9th Cir. 1999).

26

ORDER - 3

1        As for the technical statements and alleged hearsay testimony, Defendants do not provide

2    proper page and line numbers for statements in this affidavit that should be stricken by this Court.

3    Just as it is not the Court's duty to comb through evidence to ferret out support for a case without

4    proper page and line citations, courts need not sift through evidence for alleged inadmissible

5    statements without the aid of pinpoint cites.  See Orr v. Bank of America, 285 F. 3d 764, 775 (9th Cir.

6    2002).  In the future, if Defendants would like statements struck, they must provide the line and page

7    number of the offending statements, just as they expect Plaintiffs to do when citing supporting

8    evidence. The Court finds that without specific pinpoint cites,  it would be inappropriate to strike this

9    entire declaration or portions thereof.

10        **B.  Testimonial Declarations of Counsel**

11        Defendants assert that many of the declarations proffered by Mr. Montalvo in support of his

12    case are testimonial declarations of Plaintiffs' counsel and improper for this reason.  Defendants ask

13    that the following declarations, and their attachments, be struck:  Counsel's Declaration Regarding

14    Notice (Dkt. No. 350), Declaration of Counsel Re: Comparator Files (Dkt. No. 351), and Declaration

15    of Plaintiffs' Counsel re: Manager Depositions in Response to Summary Judgment Motions (Dkt. No.

16    335).  Plaintiff's Counsel, on March 30, 2006, submitted substitute documents for two of these,

17    entitled "Replacement Declaration of Plaintiff's Counsel in Response to Montalvo's Summary

18    Judgment Regarding Notice" (submitted as Dkt. No. 386, replacing Dkt. No. 350) and "Replacement

19    Declaration of Plaintiff's Counsel in Response to Montalvo's Summary Judgment Re: Manager

20    Depositions." (submitted as Dkt. No. 387, replacing Dkt. No. 335).  However, these documents were

21    submitted several days after Plaintiff's Response on this motion was due.  On this issue, the Court

22    rules in favor of Defendants–any declaration of Mr. Moote's that is testimonial in nature must be

23    struck. Mr. Moote is a lawyer, not a party to this case, and may not offer testimony as a witness.

24    "The foundation is laid for receiving a document in evidence by the testimony of a witness with

25    personal knowledge of the facts who attests to the identity and due execution of the document. . .,"

26    and the strictures for receiving written evidence for a motion are even greater than receiving evidence

ORDER - 4

1   during a court proceeding because affidavits are not subject to cross-examination. United States v.

2   Dibble, 429 F. 2d 598, 602 (9th Cir. 1970). For these reasons, the Court cannot accept Mr. Moote's

3   testimony regarding the substantive issues in this case.

4        Rabanco also asserts that Mr. Moote made these declarations in bad faith and should be held

5   in contempt, while Rabanco is awarded costs. Although the documents Mr. Moote has proffered are

6   inadmissable, failure to read and follow the Court rules is not necessarily an act of contempt.  The

7   Court has now reminded both parties, in this Order and the Order preceding it on Plaintiffs'

8   Emotional Distress claims (Dkt. No. 427), of what is required for presentation of evidence to this

9   Court. The Court expects that forthcoming pleadings will be filed in accordance with these standards.

10

11   **C.  Declaration of Susan Webb Bonnell**

12        Rabanco urges the Court to strike the report of Plaintiffs' expert Susan Webb Bonnell.

13   Defendants point out that in making her report, Ms. Bonnell relied upon "materials reviewing

14   comparator files; materials reviewing company investigations. . .[and] declarations and attached

15   materials of counsel for Plaintiffs." (Bonnell Decl. at 4).  This material, argues Defendants, runs afoul

16   of FRE 703, which mandates that the bases from which an expert draws her opinion be admissible in

17   evidence.  As noted above, the declarations of Mr. Moote are not proper and cannot be considered

18   allowable bases for Ms. Bonnell's opinion.  This report must be stricken.

19   **D.  Declaration of Lawrence Ortiz**

20        Rabanco also asks the Court to strike the Declaration of Lawrence Ortiz because he is not

21   qualified as an expert in garbage truck safety and his declaration makes assertions for which he

22   allegedly has no valid basis of expertise.  However, Mr. Ortiz is not being offered as an expert by

23   Plaintiff Montalvo.  A lay witness' opinion testimony must be based on his own perception of events

24   and offered in order to help clarify his own testimony. Fed. R. Evid. 701.  Here, most of Mr. Ortiz'

25   testimony is based on his own observations as a foreman at Rabanco and should be allowed.

26   **III.  Summary Judgment on Plaintiff Montalvo's Claims**

ORDER - 5

1   Defendants are moving to dismiss all of the claims that Mr. Montalvo has asserted against

2   them. Plaintiff Pascual Montalvo is bringing claims for disparate treatment and hostile work

3   environment under the Washington Law Against Discrimination ("WLAD"), RCW §49.060.030, et

4   seq. and 42 U.S.C. §1981, Hostile Work Environment Public Policy Violation under Washington's

5   common law, Retaliation under WLAD and, Negligent Supervision and Training, Negligent Infliction

6   of Emotional Distress and Outrage. (See "Amended Clarification of Complaint Claims and Complaint

7   Amendments," Dkt. No. 281).  Although the Complaint does not state explicitly that Plaintiff is

8   bringing claims under 42 U.S.C. §2000e, et seq. ("Title VII"), the parties' motions, responses, and

9   replies all incorporate Title VII claims into their arguments. Plaintiff Montalvo also included a claim

10   under the Washington Consumer Protection Act in the Complaint, but this claim was voluntarily

11   dismissed on March 3, 2006. (Dkt. No. 313).

12   **A.  Disparate Treatment**

13   In order to make out a prima facie case for racial discrimination based on disparate treatment

14   a Plaintiff must demonstrate that he: 1) belongs to protected class; 2) was treated less favorably in

15   terms of the conditions of his employment; 3) than a similarly situated, nonprotected employee.  The

16   Plaintiff must also show that he and the comparator were doing substantially the same work.

17   Washington v. Boeing, 105 Wn. App. 1, 13 (2001).  Washington has, for the most part, adopted the

18   burden-shifting approach articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973),

19   making the test for disparate treatment under the WLAD similar to the federal test for disparate

20   treatment under Title VII. Hill v. BCTI Income Fund-I, 144 Wn. 2d 172, 180 (2001).  Once the

21   Plaintiff has demonstrated that he can make out a prima facie case for disparate treatment, the burden

22   shifts to the employer to articulate a legitimate, nondiscriminatory reason for the way the employee

23   was treated. Johnson v. Dep't of Soc. & Health Servs., 80 Wn. App. 212, 227 (1996). At this point,

24   the burden falls to the Plaintiff to show that the employer's rationale for its actions is pretextual. Id.

25   An employee can demonstrate pretext by submitting evidence that a non-minority comparator

26   committed infractions that were similarly serious, but was not disciplined to the same degree as the

ORDER - 6

1  minority employee. Id.  Although the final burden of proof always rests with Plaintiff under this

2  paradigm, the burden-shifting mechanism was designed to allow Plaintiffs a fair chance at proving

3  discrimination through indirect, circumstantial evidence, as is often necessitated in discrimination

4  cases. Hill, 144 Wn. 2d at 180.  Because of the fact-intensive nature of this inquiry, once Plaintiff has

5  demonstrated that he is able to make out a prima facie case of race discrimination, summary judgment

6  will generally be inappropriate. Johnson, 80 Wn. App. at 229.

7          Mr. Montalvo is a Latino who meets the definition of "protected class" for the prima facie

8  test.  He claims that he was treated more harshly than other drivers after his accidents because the

9  accidents were not his fault and other non-Latino drivers who had multiple accidents were not

10  terminated, or they were reinstated after termination. (Montalvo Dep. at 92).  Although it appears

11  that there may be existing evidence that supports Mr. Montalvo's assertion that he was treated

12  differently than white drivers who had numerous accidents, this information is only presented in the

13  Moote Declaration Regarding Comparator Files (Dkt. No. 351) and the Bonnell Declaration (Dkt.

14  No. 353), which this Court has struck.  As noted above, the Moote declaration presents evidentiary

15  problems because it is Mr. Moote's account of what he saw during his review of comparator files, but

16  none of the underlying files are attached. The Bonnell declaration is equally problematic because it

17  relies on Mr. Moote's declaration.  For these reasons, the Court must GRANT Rabanco's motion for

18  summary judgment as to Mr. Montalvo's disparate treatment claims.

19      **B. Hostile Work Environment**

20          Mr. Montalvo brings claims under the WLAD and 42 U.S.C. §1981 for a hostile work

21  environment.  In order to make out a prima facie case for a racially hostile work environment, Mr.

22  Montalvo must show that: 1) he suffered unwelcome harassment; 2) the harassment was because of

23  race; 3) the harassment affected the terms and conditions of employment; and 4) the harassment can

24  be imputed to Rabanco. Washington v. Boeing, 105 Wn. App. 1, 13 (2001).  The claim of hostile

25  work environment is aimed at redressing the wrongs that occur, "[w]hen the workplace is permeated

26  with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the

ORDER - 7

conditions of the victim's employment and create an abusive working environment." <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21 (1993) (internal citations omitted).  In the case at hand, Mr. Montalvo submitted evidence that he endured unwelcome harassment that was because of race.  For example, Mr. Montalvo testified that he was regularly called "Speedy Gonzales" by Jason Cochran, who was a training supervisor, was called "Mexican" in a disrespectful manner on one occasion by another supervisor, and heard many of his fellow minority workers referred to as "boy." For these reasons, Plaintiff can establish that he meets the first two criteria for establishing a prima facie case as to hostile work environment.  Rabanco contends, however, that Plaintiff cannot establish that the harassment was widespread enough to alter his terms and conditions of employment and that the harassment cannot be imputed to Rabanco.  Rabanco reminds the Court that merely offensive behavior will not suffice. <u>Id.</u>

### 1) Harassment that Alters the Terms and Conditions of Employment

In order to show that harassment in the workplace is so prevalent and abusive that it creates a hostile work environment, a Plaintiff must show that the offending behavior was "both objectively and subjectively offensive, one that a reasonable person would find hostile and abusive and one that the victim in fact did perceive to be so." <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 787 (1998).

### a. Objectively Offensive

When assessing the objective portion of a plaintiff's claim, the Court assumes the perspective of the reasonable victim. <u>Harris</u>, 510 U.S. at 22. In determining whether harassment in a plaintiff's workplace was sufficiently severe or pervasive to be actionable, courts must look at all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere utterance, and whether it unreasonably interferes with an employee's work performance. <u>Vasquez v. County of Los Angeles</u>, 349 F.3d 634, 642 (9th Cir. 2003).  The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct. <u>Nichols v. Azteca Restaurant Enterprises, Inc.</u>, 256 F.3d 864, 872 (9th Cir. 2001).  Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will

ORDER - 8

1   not amount to discriminatory changes in the terms and conditions of employment.  Id.  However, in

2   cases where several incidents occur over time, the Court must aggregate the occurrences and analyze

3   the situation as a whole to determine if a hostile workplace existed.  Williams v. General Motors

4   Corp., 187 F. 3d 553, 562-3 (6th Cir. 1999).

5          In Mr. Montalvo's case, Rabanco argues that the treatment to which he was subjected

6   constitutes a series of  "off-hand comments" and "isolated incidents."  However, the deposition

7   transcript of Mr. Montalvo that Defendants submit belies this assertion.  Mr. Montalvo claims that he

8   was called "Speedy Gonzalez" by Jason Cochran on a habitual basis. Additionally, he was aware of

9   the fact that Carl Passmore regularly referred to workers of color as "boy." (Montalvo Dep. At 135-

10  138). He also claims that while other non-minority drivers were re-hired after having multiple

11  accidents, he was terminated for having accidents that were not his fault. Taken in the aggregate and

12  in the light most favorable to him, Plaintiff's experiences raise an issue of fact as to whether or not a

13  reasonable person in his position would have found the harassment objectively offensive.

                    **b.  Subjectively Offensive**

14

15         If the victim does not subjectively perceive the environment to be abusive, the conduct has not

16  actually altered the conditions of the victim's employment, and there is no Title VII violation.

17  Nichols, 256 F.3d at 873 (quoting Harris, 510 U.S. at 21-22).  Hence, the Court must determine

18  whether Plaintiff, by his conduct, indicated that the alleged harassment was unwelcome.  Id.  In the

19  case at hand, Mr. Montalvo testified that he was one of the employees who signed the complaint

20  letter to CEO Van Weeldon because he was concerned about the racial environment at Rabanco.

21  This is behavior that would tend to indicate that he found the treatment he experienced subjectively

22  offensive and raises an issue of fact as to whether or not Mr. Montalvo found his work environment

23  at Rabanco subjectively offensive.

24         **2) Harassment that can be Imputed to Rabanco**

                    **a.   From Co-Workers**
25

26

ORDER - 9

1    Rabanco argues that Jason Cochran was a fellow employee of Mr. Montalvo's, while Mr.

2    Montalvo argues that he was a supervisor. Because the Court can find no evidence in the record

3    definitively resolving this issue, it will construe the facts in the light most favorable to Plaintiff

4    Montalvo and assume, for the purposes of this motion only, that Mr. Cochran was a supervisor at the

5    time that he made any of the "Speedy Gonzales" comments to Mr. Montalvo.

6    **b. From Supervisors**

7    When evaluating whether or not an employer is liable for the harassment of its employees by

8    supervisors, the U.S. Supreme Court has adopted a vicarious liability standard. Burlington Indus.

9    Inc., v. Ellerth, 524 U.S. 742, 765.  The justification for heightened liability when supervisors are

10   responsible for the creation of a hostile work place is that supervisors are able to use their position

11   within an organization to bring the weight of the organization to bear on an employee. Holly D. v.

12   California Institute of Technology, 339 F. 3d 1158, 1173 (2003).  When a tangible employment

13   action such as discharge, demotion, or undesirable reassignment occurs as a result of the hostile

14   workplace created by a supervisor, there is no defense to this liability.  However, when no tangible

15   employment action has occurred, the defendant employer may present an affirmative defense**.** Ellerth

16   at 765. To succeed on the affirmative defense, an employer must show that it took reasonable

17   measures to prevent and correct the situation and that the employee unreasonably failed to take

18   advantage of these measures. Id.

19   Mr. Montalvo alleges that he was terminated for the accidents he had, although they were not

20   his fault, because of his race or national origin.  He alleges that, as a minority, he felt especially

21   vulnerable and pressured to carry overweight loads, which led to at least his fourth and final accident

22   before he was terminated.  Making all inferences in favor of Plaintiff Montalvo, the racial slurs he

23   heard from supervisors Carl Passmore and Jason Cochran, could have contributed to this feeling of

24   vulnerability.

25   Rabanco, on the other hand, has stated that it had a policy in place to deal with racial and

26   sexual harassment in the workplace. (Dkt. No. 318 at 20).  As noted above, Mr. Montalvo admits in

ORDER - 10

his deposition that he did not make any complaints to supervisors regarding the alleged harassment he experienced because he was afraid of what would happen to him.  Presuming, without deciding, for the purposes of this motion that Rabanco's policy was a reasonable one that was appropriately crafted to deal with these situations, an issue of fact still remains as to whether or not Mr. Montalvo was reasonably fearful of reprisals that he did not use these mechanisms.  This is a fact for the jury. For this reason, the Court DENIES summary judgment on the issue of hostile work environment as to Mr. Montalvo.

### C.  Violation of Public Policy

Plaintiff Montalvo relies on Thompson v. St. Regis Paper Co., 102 Wn. 2d 219 (1984), to support his claims that Rabanco's treatment of him violated public policy.  However,  Thompson is not an employment discrimination case–it addresses the claims of a plaintiff who was dismissed from his job after seventeen years of service without being given a reason, in contravention of contract principles. Id.  In Thompson, the Washington Supreme Court recognized for the first time that a tort claim could exist for discharge in violation of public policy.

Defendants argue that Mr. Montalvo's claim should be dismissed because there is an adequate remedy for the injuries he claims provided under the WLAD.  Defendants are correct.  In Korslund v. Dyncorp Tri-Cities, Inc., 156 Wn. 2d 168 (2005), plaintiffs alleged that they had been discharged in violation of public policy for being whistle blowers regarding safety issues at the Hanford power facility. There, the Washington Supreme Court held that plaintiffs had adequate remedies available to them under the Energy Reorganization Act ("ERA") and, therefore, could not proceed on their tort claim in that matter.  Id. at 183.  The same principle applies in this matter and prevents Mr. Montalvo from proceeding with his discharge in violation of public policy tort claim.  Although he is correct that the WLAD does make a strong public policy statement against racial discrimination in the state of Washington, it also provides him with adequate avenues for recovery.  Accordingly, Mr. Montalvo's public policy tort claim should be DISMISSED.

### D.  Retaliation

ORDER - 11

Title VII and the WLAD also protect employees against retaliation for engaging in statutorily protected activities designed to stop illegal discrimination.  In order to make out a prima facie case for retaliation, Plaintiffs must demonstrate that: "(1) they were engaged in statutorily protected activities, (2) an adverse employment action was taken, and (3) the statutorily protected activity was a substantial factor in the employer's adverse employment decision." Schonauer v. DCR Entertainment, 79 Wn. App. 808, 827 (1995).  Rabanco argues that Plaintiff did not suffer any adverse employment actions.

Defendant Rabanco bases its motion as to Mr. Montalvo's retaliation claims on the facts that Mr. Montalvo admitted in his deposition that he failed to make any complaints about the racial slurs he heard and that he did not have a ready answer in his deposition as to what events gave rise to his retaliation claim.  The latter argument is disregarded by the Court because Defendants are essentially asking a plaintiff to make a legal conclusion about his case.

Mr. Montalvo claims that his termination and failure to be reinstated, despite a deal brokered by his union, after his accidents constitutes retaliation on the part of Rabanco.  Mr. Montalvo testified in his deposition that after he was fired, he worked to organize many of the Latino workers at Rabanco to sign the complaint letter sent to CEO Van Weeldon in the summer of 2001.  Among other things, the letter complained about the treatment of minority workers at Rabanco.  Under Title VII, this type of activity is a protected one because it is one that aims to redress racial discrimination in the work place. Under Schoenauer, Mr. Montalvo's loss of his job qualifies as an adverse employment action. Id.  However, there is a dispute between Plaintiff and Defendant as to whether Mr. Montalvo's termination and failure to be reinstated was a result of his accidents, as Rabanco claims, or his organizational activities, as Plaintiff claims.  Construing all factual ambiguities in Mr. Montalvo's favor, the Court DENIES summary judgment on this claim.

**E.  Negligent Supervision and Training**

In the Amended Clarification of Complaint Claims and Complaint Amendments (Dkt. No. 281), Plaintiffs assert generally that Defendants are liable for the negligent supervision and

ORDER - 12

1  training of their employees and failed to take reasonable corrective action, presumably referring to the

2  events giving rise to this case.  This claim is made no clearer in Plaintiff Montalvo's Response to

3  Defendants' motion for summary judgment on this issue.  Montalvo's Response only states that his

4  tort claims, "have been appropriately and thoroughly addressed by both parties in a previously filed

5  motion pursuant to this Court's order." (Dkt. No. 352 at 22).  The Court can find no such briefing on

6  this issue. Mr. Montalvo's Response does not provide the Court with any evidence regarding

7  Rabanco's alleged supervision, nor does it provide the Court with any factual assertions regarding

8  who was allegedly negligently supervised.  Bare assertions of this type will not support a plaintiff's

9  effort to avoid summary judgment. Celotex, 477 U.S. at 323-24.  Accordingly, Mr. Montalvo's claim

10  of negligent supervision and training is DISMISSED.

11      **F. Outrage and Negligent Infliction of Emotional Distress**

12      Defendants reiterate their motion for dismissal of Plaintiff's tort claims of Negligent Infliction

13  of Emotional Distress ("NIED") and Outrage.  This Court has announced that it will determine for

14  each individual Plaintiff whether or not the factual scenario he presents is sufficient to support these

15  claims at the time Defendants bring a summary judgment motion as to that particular plaintiff.  In the

16  present case, Mr. Montalvo is not able to raise an issue of fact for the jury that he experienced the

17  level of conduct necessary to support an outrage claim.  Additionally, Mr. Montalvo has not

18  submitted sufficient admissible evidence to support his NIED claim regarding the issue of whether his

19  emotional distress is susceptible to diagnosis and provable via medical evidence.  Haubry v. Snow,

20  106 Wn. App. 666, 679 (2001).

21      **a) Outrage**

22      The tort of outrage requires the proof of three elements: "(1) extreme and outrageous

23  conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of

24  severe emotional distress." Kloepfel v. Bokor, 149 Wn. 2d 192, 195 (2003). An employer may be

25  held vicariously liable for outrage committed by an employee if the person committing outrage was

26  acting in scope of her employment.  Robel v. Roundup, 148 Wn.2d 35, 53 (2002).  Whether a

ORDER - 13

1    Plaintiff suffered outrage is normally a question of fact for the jury, but it is initially for the Court as

2    to whether reasonable minds could differ as to whether or not outrage had been committed. <u>Dicomes</u>

3    <u>v. State of Washington</u>, 113 Wn. 2d 612, 630 (1989).

4          The Court also takes into account that outrage cannot stem from "mere insults, indignities,

5    [or] threats." <u>Kloepfel v. Bokor</u>, 149 Wn. 2d at 196.  Outrage must stem from behavior that is,

6    "'beyond all possible bounds of decency, . . .atrocious, and utterly intolerable in a civilized

7    community.'" <u>Robel</u>, 148 Wn. 2d at 51, (internal citations omitted).  Additionally,  the Court

8    recognizes that under applicable precedent, "[w]orkplace disciplinary actions such as writing

9    administrative reports, receiving oral reprimands, and internal affairs investigations" will not normally

10   support a claim of outrage. <u>Kirby v. City of Tacoma</u>, 124 Wn. App. 454, 474 (2004).  In evaluating

11   whether or not a claim of outrage could result in liability, the Court considers:

12         (a) the position occupied by the defendant; (b) whether plaintiff was peculiarly
           susceptible to emotional distress, and if defendant knew this fact; (c) whether
13         defendant's conduct may have been privileged under the circumstances; (d) the degree
           of emotional distress caused by a party must be severe as opposed to constituting mere
14         annoyance, inconvenience or the embarrassment which normally occur in a
           confrontation of the parties; and, (e) the actor must be aware that there is a high
15         probability that his conduct will cause severe emotional distress and he must proceed
           in a conscious disregard of it.

16

17    <u>Birklid v. Boeing</u>, 127 Wn. 2d 853, 867 (1995), (internal citations omitted). In considering these

18   factors, the Court recognizes that "'added impetus' is given to an outrage claim '[w]hen one is a

19   position of authority, actual or apparent, over another has allegedly made racial slurs and jokes and

20   comments.'" <u>Roebel</u>, 148 Wn. 2d at 52 (quoting <u>Contreras v. Crown Zellerbach Corp.</u>, 88 Wn. 2d

21   735, 741 (1977)).

22         The Court has extensively examined the factual records for Plaintiff Montalvo. The multiple

23   incidents of explicit and veiled harassment and racial hostility that he allegedly experienced is noted

24   above.  Also noted is the fact that many of these comments were made by people in positions of

25   authority, or those perceived to have authority.  Nonetheless, the incidences of racial harassment that

26   Plaintiff reports are somewhat mundane in nature and relatively far apart in time.  Based on this

ORDER - 14

1  record, the Court does not find that reasonable minds could differ as to whether Mr. Montalvo

2  experienced behavior rising to the level of outrage.  Although being subjected to the various types of

3  discriminatory and hostile behaviors that Plaintiff complains of would certainly be uncomfortable and

4  offensive, Washington courts expect Plaintiffs to "be hardened to a certain degree of rough language,

5  unkindness and lack of consideration." Grimsby v. Samson, 85 Wn. 2d 52, 59 (1975).  For these

6  reasons, the Court DISMISSES Plaintiff's Outrage claim.

7  **b) Negligent Infliction of Emotional Distress**

8  In order to support a claim for negligent infliction of emotional distress, a plaintiff must,

9  "establish a duty, a breach, proximate cause, and damage or injury." Haubry, 106 Wn. App. at 678.

10  In establishing the injury, Plaintiff must submit admissable evidence that he suffered from a

11  diagnosable emotional disorder. Id. at 679.  Mr. Montalvo has submitted no admissible evidence to

12  corroborate an assertion that he suffered from a diagnosable disorder because of his emotional

13  distress. As stated in the Court's previous Order on Defendants' motion for summary judgment on

14  Plaintiffs' IIED, NIED, and Outrage Claims (Dkt. No. 427), the Court will not take it upon itself to

15  find evidence in individual Plaintiff's depositions that has not been properly cited by page number and

16  line. See Local CR 10(e)(6).  For this reason, his claim on this issue must also be DISMISSED.

CONCLUSION

18  The Court GRANTS Defendants' Motions to Strike the testimonial affidavits of Mr. Moote

19  and the expert report of Ms. Bonnell.  The Court DENIES Defendants' Motions to Strike Mr.

20  Montalvo's and Mr. Ortiz's affidavits.  Additionally, the Court GRANTS Summary Judgment as to

21  Plaintiff Montalvo's Disparate Treatment, Violation of Public Policy, Negligent Supervision and

22  Training, Outrage, and Negligent Infliction of Emotional Distress Claims and DENIES Summary

23  Judgment as to Plaintiff Montalvo's Hostile Work Place and Retaliation claims.

24  The Clerk of the Court shall direct a copy of this order be sent to all counsel of record.

25  Dated: April 26, 2006

Marsha J. Pechman
United States District Judge

ORDER - 15