UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANDRE JONES, et al.,

              Plaintiff(s),

v.

RABANCO, Ltd., et al.,

              Defendant(s).

No. C03-3195P

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO THE CLAIMS OF PLAINTIFF THOMAS HARRIS

      This matter comes before the Court on Defendants' Motion for Summary Judgment Dismissing Claims of Plaintiff Thomas Harris (Dkt. No. 354). Having considered Defendants' Motion, Plaintiff Harris' Opposition, Defendants' Reply and all other documents and papers pertinent to this motion, the Court DENIES all of Defendants' motions to strike. In addition, the Court GRANTS summary judgment as to Plaintiff's Hostile Work Environment, Violation of Public Policy, Negligent Supervision, Outrage, and Negligent Infliction of Emotional Distress claims and DENIES summary judgment as to Plaintiff Harris' Retaliation claim.

## BACKGROUND

      Plaintiff started working for Rabanco, now a subsidiary of Allied, in 1994, as a garbage truck driver. (Harris Decl. at 2). Mr. Harris claims that despite three accidents and eight noise complaints from customers on his personnel file, his job performance was good as compared to that of other employees. Id. at 4. In 1995, before Allied took over Rabanco, Harris hit a taillight fixture as he drove his truck between a parked car and a building causing sixty dollars worth of damage. Between 1994 and 1999 eight customers made noise complaints against Harris for picking up their garbage

ORDER - 1

before 7:00 a.m. In May 2001, a complaint was filed against Harris for reckless driving while changing lanes, and in May 2001, he hit an overhead wire while driving a "tall front-loader" truck. Id. Mr. Harris was given written warnings pertaining to the above incidents. (See Ex. 360-68 and 370-71 attached to Harris Dep.).

Mr. Harris alleges that after Allied took over Rabanco, the work environment that was once pleasant became racially hostile. Harris alleges that minority co-workers talked about the use of racial slurs by managers and supervisors in his presence. He also heard from minority drivers that the operations manager Marsden and supervisors Brent Fenske and Gary Fox referred to African-Americans as "Buckwheat." (Harris Decl. at 2). Harris also alleges that he heard from minority employees that managers were targeting minorities for discipline and termination. (Id.) However, Mr. Harris admits that throughout his employment with Rabanco, nobody has ever used racial slurs toward him directly. (Harris Dep. at 96, lns. 18-24).

Mr. Harris states that he became a target for termination like other minority employees at Rabanco when he applied for a promotion to become a driver trainer in 2002. He was never promoted. He alleges that although he had more seniority and was more qualified for the position than other applicants, he was denied a promotion because of his race. (Harris Decl.at 3). Mr. Harris alleges that the promotion was given to a Caucasian driver, Dan Johnson. (Id.). When Mr. Harris was denied a promotion, he filed a grievance. However, the outcome of the grievance is not provided. Due to the repetitive nature of Mr. Harris' job, he developed tendonitis in the wrist and shoulder. (See Born Decl., Ex. K ). The following time line reflects the events that took place pertaining to Mr. Harris tendonitis condition up until his termination.

- October 17, 2001: Mr. Harris saw Dr. Ajudia for his tendonitis problem.
- February 24, 2003: Mr. Harris filed an L&I claim (N0. X405508).
- March 5, 2003: Dr. Ajudia referred Mr. Harris to a hand specialist, Dr. Luu.
- March 8, 2003: Dr. Luu recommended light duties for Mr. Harris.

ORDER - 2

- March 9, 2003: Mr. Harris called the operations manager Mr. Marsden and left a message that on Tuesday (March 11, 2003) he was going to have x-rays done because he still had pain in the hands and shoulder. Mr. Harris also informed Mr. Marsden that he was going to get a new doctor because his former doctor was tired of doing L& I paper work. (Born Decl., Ex. C).
- March 12, 2003: Rabanco sent a letter to Mr. Harris offering him light duties to commence on March 17, 2003. (Born Dec., Ex. F).
- March 13, 2003: Mr. Harris obtained a new physician, Dr. Valentina Warner.
- March 13, 2003: Dr. Warner diagnosed Mr. Harris with chronic wrist and arm pain and recommended work release from March 10, 2003, to March 24, 2003 (Born Decl., Ex. G). A copy of this release form was sent to Rabanco. (Harris Dep. at 198.)
- March 14, 2003: Mr. Harris received the letter offering him light duties.
- March 16, 2003: Mr. Harris rejected the offer because he was still physically unable to even perform light duties.
- March 24, 2003: Harris received a letter dated March 19, 2003, from Rabanco stating that Mr. Harris has not been at work since March 8, 2003, and Rabanco had no choice but to conclude that Mr. Harris had voluntarily quit his job. (Born Decl., Ex. U).
- March 21, 2003: Mr. Harris was terminated from his employment. (Born Decl., Ex. S)
- March 27, 2003: Mr. Harris received his termination notice via certified mail.
- April 28, 2003: Rabanco directed its agent ADP Unemployment Group to protest Mr. Harris' unemployment benefits alleging that Mr. Harris abandoned his job for three consecutive days. (Born Decl., Ex. T).

Mr. Harris claims that he suffered racial harassment and discrimination. He states that his termination was in retaliation for his filing a grievance alleging discrimination from his employer. He also alleges the torts of negligent supervision, negligent infliction of emotional distress and outrage, and a public policy violation claim. Rabanco, on the other hand, argues that Mr. Harris was not terminated because of his race, but due to his failure to return to work after his medical leave had

ORDER - 3

elapsed. Defendants also claim that Rabanco is a company that offers equal employment opportunity to all people regardless of race, and has strong anti-discrimination and anti-harassment policies.

ANALYSIS

**I. Summary Judgment Analysis**

This matter is before the Court on Defendants' motion for summary judgment. Summary judgment is not warranted if a material issue of fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. Id. at 324.

**II. Evidentiary Issues**

Before ruling on the substance of Defendant's motion to dismiss Mr. Harris' claims, the Court will first address the materials submitted by Plaintiff in support of his case that Defendants ask to be struck. Proceeding in this manner allows the Court to rule on the evidentiary value of the documents offered as evidence before considering them in the legal analysis of Mr. Harris' claims.

**A. The Bonnell Declaration**

ORDER - 4

Defendants offer several reasons why they believe the Court should strike Ms. Bonnell's declaration–they argue that it is not relevant to the current proceedings; it is not helpful to the Court; the appropriate records are not attached to her declaration; she reaches improper legal conclusions and that these conclusions are insufficiently supported by factual data; her declaration is allegedly tainted by her initial reliance on counsel's declaration; and her opinion is based on hearsay and hearsay within hearsay.

Defendants' argument that Ms. Bonnell's declaration should be stricken because her opinion is based on Harris' disparate treatment claim which is not before the Court is not supported by any legal authority. The Court will not strike Ms. Bonnell's declaration on these grounds. Second, Defendants argument that Ms. Bonnell has not established that her testimony will assist the trier of fact as required by the Fed. R. Evid. 702 will not be credited.  In support of this argument, Defendants cite a case where expert testimony by a human resources expert was struck because it only presented information that was "not so complicated as to require the testimony of an expert witness. . ." Wilson v. Muckala, 303 F. 3d 1207, 1218 (10th Cir. 2002).  The Court finds that Ms. Bonnell's declaration presents information regarding the comparator files that is complex enough to justify the use of expert testimony.  Accordingly, the Court will not strike the declaration on this basis.

Defendants are also asking the Court to strike section 3:18-10:15 of Ms. Bonnell's declaration pursuant to Rule 56(e) because Ms. Bonnell failed to attach the comparator files that she relied on when evaluating Mr. Harris' personnel file to determine whether Mr. Harris was treated differently in comparison with other employees who are not African-American.  Defendants also ask the Court to strike the declaration because Ms. Bonnell does not provide sufficient comparator information. Generally, Fed. R. Civ. P. 56(e) requires a party who files an affidavit to "attach and serve with" sworn or certified copies of all papers referred to in the affidavit. However, in case a party fails to comply with Rule 56(e) the court may be lenient in exercising its discretion. The Ninth Circuit Court cautioned that, "discretionary leniency does not stretch so far that Rule 56(e) becomes meaningless"

ORDER - 5

School Dist. No1J, Multnomah Cty v. Acands, Inc., 5 F.3d 1255,1261 (9th Cir.1993) (citing Peterson v. United States, 694 F.2d 943, 945 (3d.Cir.1982)). Here, the Court will exercise its discretionary leniency because the alleged comparator files Ms. Bonnell studied are in possession of the Defendants. Similarly, the information that Defendants claim is lacking is also in their possession. However, the Court advises both parties that, should this case go to trial, evidentiary standards will be applied rigorously.

As for Defendants' objections regarding improper legal conclusions and insufficient factual data, the Court has reviewed the sections of the Bonnell affidavit to which Defendants have called the Court's attention. The Court finds that the conclusions drawn by Ms. Bonnell are not legal ones, but conclusions that she reaches in her capacity as a human resources expert. She will not, however, be allowed at trial to make bald statements regarding whether or not someone experienced racial discrimination. Additionally, the Court finds that Ms. Bonnell's declaration is based on the examination of numerous employee files and meets the factual data requirement of Fed. R. Evid. 702.

Next, Defendants argue that Ms. Bonnell's declaration is tainted because her initial declaration relied on Mr. Peter Moote's testimony. However, Defendants by their own admission admit that Ms. Bonnell relies "solely" on her review of Mr. Harris' and comparator personnel files. (Defs' Reply at 8, lns. 10-11). Therefore, prior reliance is no longer an issue.

Finaly, Defendants argue that Ms. Bonnell's opinion is not based on facts and data, but on hearsay and hearsay within hearsay in violation of Fed R. Evid.703. Defendants are incorrect because Ms. Bonnell's opinion is based on the facts and data collected from personnel files she reviewed which are business records maintained by the Defendants. As such, these records are an exception to the hearsay rule under Fed. R. Evid. 803(6).

The Court DENIES Defendants' Motion to Strike the Declaration of Ms. Bonnell.

**B. Exhibits Attached to Rob Born and Peter Moote Declaration**

ORDER - 6

1    Defendants argue that all exhibits to Mr. Born's (Ex. A-Y) and Mr. Moote's (Ex.1-4)
2 declarations must be stricken from the record because they are not properly authenticated.
3 Rule 56(e) requires exhibits attached to affidavits for the purpose of summary judgment motions to be
4 identified and authenticated. Orr v. Bank of America, NT &SA, 285 F.3d 764, 773-74 (9th Cir. 2002).
5 Nonetheless, it is within the Court's discretion to conduct an independent analysis and admit into
6 evidence certain documents containing "a prima facie aura of reliability," even where they are not
7 properly authenticated. McLaury v. Duff & Phelps, Inc., 691 F. Supp. 1090, 1096, n.2 (D. Ill. 1988);
8 see also Coates v. Johnson & Johnson, 756 F.2d 524, 550 (7th Cir. 1985) (affirming District Court's
9 decision to admit items into evidence that appeared to be business records under Fed. R. Evid. 803(6)
10 in an employment discrimination matter).

11    The reasoning in McLaury is instructive here in regard to the exhibits attached to the Born
12 Declaration. Exhibits A-V and X attached to Born's declaration all have an aura of reliability because:
13 (1) they were maintained by the Defendants in the normal course of business; (2) they were produced
14 by the Defendants during the course of discovery; and (3) some were authored by the Defendants.
15 For these reasons, the Court will not strike exhibits A-V and X from the record. Likewise Exhibits 1-
16 4 will also not be stricken from the record because they are requests and responses pertaining to
17 discovery granted by the Court.

18    Second, Defendants argue that the excerpt of Mr. Fuenzalida's attached as Exhibit Y to
19 Born's Declaration should be struck from the record because it is not certified by a court reporter.
20 Fed. R. Civ. P 30(f)(1) requires an officer of the court to certify that the witness was duly sworn and
21 that the deposition transcript was a true record of the testimony given by the deponent. The officer of
22 the court must also prepare a written certificate to accompany the record of the deposition. Orr, 285
23 F.3d.764 at 774. However, Plaintiffs submitted the full copy of this deposition earlier in this litigation.
24 (Dkt. No. 167).  The earlier copy of the deposition is properly certified by a court reporter.  For the
25 purposes of this motion, the Court will accept this earlier certification, but cautions both parties that
26 strict evidentiary standards will be applied at trial.

Third, Defendants argue that the Robichaud deposition attached as Exhibit W to the Born declaration should also be stricken because the reporter's certification is not signed. Rule 901 requires that the proponent introduce evidence sufficient to support a finding that the document is what the proponent claims it to be. In particular, it is very difficult to understand Rabanco's objection to Robichaud's deposition, which was (1) taken in the course of this litigation, (2) at which Rabanco was represented by its own counsel, (3) and a signed copy of Robichaud's deposition is in Rabanco's possession. (See Robinson-Dorn 4/21/06 Decl., Ex. A). Accordingly, Mr. Harris should will not be precluded from relying upon Robichaud's deposition because its only deficiency is the lack of reporter's signature.

### C. Declaration of Mr. Harris

Defendants also bring several statements in Mr. Harris' declaration to the Court's attention and claim that these statements should be struck because they are speculative, constitute hearsay within hearsay, and are not based on the personal knowledge of Mr. Harris. (Defs' Reply at 11-12). The Court finds that, for the most part, Mr. Harris' declaration is a recounting of his own experiences and perceptions while working at Rabanco. Included in this statement, are Mr. Harris' statements regarding his perception of racially-hostile comments that he heard through other people or reports of discrimination that he heard from other Rabanco workers. These appear to be the statements that Rabanco is classifying as hearsay. The statements cited by Defendants reflect Mr. Harris' perceptions of events at U.S. Disposal and people with whom he worked and are properly classified as an exception to the hearsay rule under Fed. R. Evid. 803(3). These statements reflect Mr. Harris' perception of the working environment at U.S. Disposal and are germane to the Court's present task of taking the totality of circumstances into consideration to determine whether or not an issue of fact may exist for trial on Mr. Harris' allegations. See Schwapp v. Town of Avon, 118 F. 3d 106, 111 (2nd Cir. 1997). The parties are cautioned, however, that strict evidentiary standards will be applied at trial.

### III. Summary Judgment on Plaintiff Harris' Claims

ORDER - 8

Defendants are moving to dismiss all of the claims that Mr. Harris has asserted against them except for his disparate treatment claims.

**A. Hostile Work Environment**

Mr. Harris brings a claim for hostile work environment under the Washington Law Against Discrimination ("WLAD") RCW § 49.060.030, et seq. and 42 U.S.C.§ 1981. Mr. Harris is claiming that he was forced to work in an office were his managers routinely used racial slurs and targeted minority employees for termination. In order to show that harassment in the workplace is so prevalent and abusive that it creates a hostile work environment, a Plaintiff must show that the offending behavior was "both objectively and subjectively offensive, one that a reasonable person would find hostile and abusive and one that the victim in fact did perceive to be so." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998). Defendants claim that Mr. Harris cannot satisfy this standard because the level of harassment that Mr. Harris experienced was not severe enough.

In order to establish a prima facie case for a racially hostile work environment, Mr. Harris must show: (1) he suffered unwelcome harassment; (2) the harassment was because of race; (3) the harassment affected the terms and conditions of employment; and (4) the harassment can be imputed to Rabanco. Washington v. Boeing, 105 Wn. App.1, 13 (2001). The United States Supreme Court has held that "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). Here, Mr. Harris alleges that "minority co-workers frequently talked in [his] presence in the work place about racial slurs that had been addressed to them or about them by mangers and supervisors." (Harris Decl., ¶ 2 at 8). Mr. Harris by his own admission never experienced or even witnessed the use of racial slurs in the work place. (Harris Dep. at 96).

ORDER - 9

To prevail on a hostile work environment claim, Mr. Harris must show that his work environment was both subjectively and objectively hostile. He therefore must show that he perceived his work environment to be hostile, and that a reasonable person in his position would perceive it to be so. Nichols v. Azteca Rest. Enters., Inc., 256 F.3d 864, 871-72 (9th Cir. 2001). In analyzing whether the alleged conduct created an objectively hostile work environment, the Court must assess all the circumstances, "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Clark City. Sch. Dist.v. Breeden, 532 U.S. 268, 270-71 (2001)(citations omitted).  However, "simple teasing, offhand comments, isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher, 524 U.S. at 788 (1998)(citations omitted).

Mr. Harris has failed to provide the Court with any evidence to show that he was subjected to a hostile work environment that unreasonably interfered with his employment. Mr. Harris relies on second hand comments from other employees. Even when these hearsay comments are aggregated they do not raise an issue of material fact that a reasonable person in Mr. Harris' position would find them to alter the terms and conditions of his employment.

Moreover, Mr. Harris did not take any action to show that the racial comments he heard from other employees were unwelcome or that he found them to be subjectively offensive. For example, Mr. Harris did not complain to anyone about what he heard from his co-workers. By his own admission, Mr. Harris refused to sign a complaint petition to the CEO regarding racial discrimination at Rabanco. Furthermore, Mr. Harris was aware of the confidential AWARE line call set up for the purposes of calling in complaints of racial discrimination, but he failed to report the use of racial slurs. (See Harris Decl., 2: 24 and 3:4). Beyond a few statements in his declaration, the Court has no evidence that he found the second-hand reports of discrimination from his co-workers subjectively

ORDER - 10

offensive. For these reasons, the Court GRANTS summary judgment on the hostile work environment claim.

### B. Violation of Public Policy

Plaintiff Harris relies on <u>Thompson v. St. Regis Paper Co.</u>, 102 Wn. 2d 219 (1984), to support his claims that Rabanco's treatment of him violated public policy. However, <u>Thompson</u> is not an employment discrimination case–it addresses the claims of a plaintiff who was dismissed from his job after seventeen years of service without being given a reason, in contravention of contract principles. <u>Id</u>. In <u>Thompson</u>, the Washington Supreme Court recognized for the first time that a tort claim could exist for discharge in violation of public policy.

Defendants argue that Mr.Harris' claim should be dismissed because there is an adequate remedy for the injuries he claims provided under the WLAD. Defendants are correct. In <u>Korslund v. Dyncorp Tri-Cities, Inc.</u>, 156 Wn. 2d 168 (2005), plaintiffs alleged that they had been discharged in violation of public policy for being whistle blowers regarding safety issues at the Hanford power facility. There, the Washington Supreme Court held that plaintiffs had adequate remedies available to them under the Energy Reorganization Act ("ERA") and, therefore, could not proceed on their tort claim in that matter. <u>Id</u>. at 183. The same principle applies in this matter and prevents Mr. Harris from proceeding with his discharge in violation of public policy tort claim. Although he is correct that the WLAD does make a strong public policy statement against racial discrimination in the state of Washington, it also provides him with adequate avenues for recovery. Accordingly, Mr. Harris' public policy tort claim should be DISMISSED.

### C. Retaliation

Under section 704(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e-3(a), it is unlawful to retaliate against an employee because he has taken action to enforce rights protected

ORDER - 11

under Title VII. To establish a prima facie case of discriminatory retaliation, an employee must show that: (1) he engaged in an activity protected under Title VII; (2) his employer subjected him to adverse employment action; (3) that there was a casual link between the protected activity and the employer's action. <u>Steiner v. Showboat Co.</u>, 25 F.3d 1459, 1464 (9th Cir.1994). Causation sufficient to establish a prima facie case of unlawful termination "may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." <u>Yartzoff v. Thomas</u>, 809 F.2d 1371, 1376 (9th Cir. 1987). Once a plaintiff establishes a prima facie case, the burden of production shifts to the employer to illustrate that its decision was non-retaliatory. <u>Id.</u> The burden is met if the employer's decision is supported by admissible evidence which would allow the trier of fact to rationally conclude that the employer's decision was not retaliatory. <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 257 (1981). If the employer's decision is justified, then the burden shifts once more to the employee to show that the employer's proffered explanation is a pretext for discrimination. <u>Id.</u> at 256.

Mr. Harris argues that he was retaliated against for filing a grievance when he was denied a promotion to be a driver trainer. He claims that although he was more qualified than the Caucasian who got the promotion, he was not promoted because he was black. Defendants argue that Mr. Harris' retaliation claim is unfounded because he did not engage in a protected activity. However, Mr. Harris did engage in a protected activity when he filed a grievance for failure to promote him because of his race. See <u>Pardi v. Kaiser Foundation Hospitals</u>, 389 F. 3d 840, 850 (9th Cir. 2004). Second, Mr. Harris was subjected to an adverse employment action when he was terminated less than a year after filing the grievance. Third, the period between the protected action and the adverse action is close enough as to create a casual link. On the basis of these allegations, the Court finds that Mr. Harris does make out a prima facie case of retaliation, which Defendants fail to rebut by offering a

ORDER - 12

plausible alternative explanation for the pattern of behavior alleged. Instead, Defendants claim that Mr. Harris was terminated for missing three consecutive days of work. However, Mr. Harris has submitted evidence that he was terminated during his L&I medical leave after he made numerous attempts to contact his supervisors about his condition. On this basis, the Court finds that Mr. Harris has raised an issue of fact for the jury regarding whether his termination was an act of retaliation and whether or not Defendants' explanation for terminating him is pretextual. For this reason, the Court DENIES summary judgment on the issue of retaliation.

### D. Negligent Supervision and Training

In the Amended Clarification of Complaint Claims and Complaint Amendments (Dkt. No. 281), Plaintiffs assert generally that Defendants are liable for the negligent supervision and training of their employees and failed to take reasonable corrective action, presumably referring to the events giving rise to this case. However, Mr. Harris does not oppose Defendants' motion to dismiss this claim in his Response. Beyond the Complaint, the Court does not have any evidence regarding Defendants' alleged supervision, nor can the Court surmise who was allegedly negligently supervised. Plaintiffs may not rely on the pleadings alone to oppose summary judgment but must present evidence showing that there is an issue of fact for trial. Celotex, 477 U.S. at 323-24. Because Mr. Harris does not meet this burden, his claim of negligent supervision and training is DISMISSED.

### E. Outrage and Negligent Infliction of Emotional Distress

Defendants do not move here for dismissal of Plaintiff's tort claims of Negligent Infliction of Emotional Distress ("NIED") and Outrage. However, Defendants did move for dismissal of these claims previously (Dkt. No. 304). This Court has announced that it will determine for each individual Plaintiff whether or not the factual scenario he presents is sufficient to support these claims at the time Defendants bring a summary judgment motion as to that particular plaintiff. (Dkt. No. 427). In

ORDER - 13

the present case, Mr. Harris is not able to raise an issue of fact for the jury that he experienced the level of conduct necessary to support an outrage claim. Additionally, Mr. Harris has not submitted sufficient admissible evidence to support his NIED claim regarding the issue of whether his emotional distress is susceptible to diagnosis and provable via medical evidence. Haubry v. Snow, 106 Wn. App. 666, 679 (2001).

**1) Outrage**

The tort of outrage requires the proof of three elements: "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress." Kloepfel v. Bokor, 149 Wn. 2d 192, 195 (2003). An employer may be held vicariously liable for outrage committed by an employee if the person committing outrage was acting in scope of her employment. Robel v. Roundup, 148 Wn.2d 35, 53 (2002). Whether a Plaintiff suffered outrage is normally a question of fact for the jury, but it is initially for the Court as to whether reasonable minds could differ as to whether or not outrage had been committed. Dicomes v. State of Washington, 113 Wn. 2d 612, 630 (1989).

The Court also takes into account that outrage cannot stem from "mere insults, indignities, [or] threats." Kloepfel v. Bokor, 149 Wn. 2d at 196. Outrage must stem from behavior that is, "'beyond all possible bounds of decency, . . .atrocious, and utterly intolerable in a civilized community.'" Robel, 148 Wn. 2d at 51, (internal citations omitted). Additionally, the Court recognizes that under applicable precedent, "[w]orkplace disciplinary actions such as writing administrative reports, receiving oral reprimands, and internal affairs investigations" will not normally support a claim of outrage. Kirby v. City of Tacoma, 124 Wn. App. 454, 474 (2004). In evaluating whether or not a claim of outrage could result in liability, the Court considers:

> (a) the position occupied by the defendant; (b) whether plaintiff was peculiarly susceptible to emotional distress, and if defendant knew this fact; (c) whether

ORDER - 14

> defendant's conduct may have been privileged under the circumstances; (d) the degree of emotional distress caused by a party must be severe as opposed to constituting mere annoyance, inconvenience or the embarrassment which normally occur in a confrontation of the parties; and, (e) the actor must be aware that there is a high probability that his conduct will cause severe emotional distress and he must proceed in a conscious disregard of it.

Birklid v. Boeing, 127 Wn. 2d 853, 867 (1995), (internal citations omitted). In considering these factors, the Court recognizes that "'added impetus' is given to an outrage claim '[w]hen one is a position of authority, actual or apparent, over another has allegedly made racial slurs and jokes and comments.'" Roebel, 148 Wn. 2d at 52 (quoting Contreras v. Crown Zellerbach Corp., 88 Wn. 2d 735, 741 (1977)).

The Court has extensively examined the factual records for Plaintiff Harris. His allegations of racial comments and discrimination that he heard about second-hand via his co-workers do not meet the standard for outrage. This is so because Plaintiff Harris did not experience these comments for himself. Based on this record, the Court does not find that reasonable minds could differ as to whether Mr. Harris experienced behavior rising to the level of outrage. Although hearing about the discriminatory conduct in one's workplace could certainly be uncomfortable and offensive, Washington courts expect Plaintiffs to "be hardened to a certain degree of rough language, unkindness and lack of consideration." Grimsby v. Samson, 85 Wn. 2d 52, 59 (1975). For these reasons, the Court DISMISSES Plaintiff's Outrage claim.

**2) Negligent Infliction of Emotional Distress**

In order to support a claim for negligent infliction of emotional distress, a plaintiff must, "establish a duty, a breach, proximate cause, and damage or injury." Haubry, 106 Wn. App. at 678. In establishing the injury, Plaintiff must submit admissible evidence that he suffered from a diagnosable emotional disorder. Id. at 679. Mr. Harris has submitted no admissible evidence to

ORDER - 15

corroborate his assertion that he suffered from a diagnosable disorder because of his emotional distress. For this reason, his claim on this issue must also be DISMISSED.

## CONCLUSION

The Court DENIES all of Defendants' motions to strike. In addition, the Court GRANTS summary judgment as to Plaintiff's Hostile Work Environment, Violation of Public Policy, Negligent Supervision, Outrage, and Negligent Infliction of Emotional Distress claims and DENIES summary judgment as to Plaintiff Harris' Retaliation claim.

Dated: July \_\_\_\_\_, 2006

Marsha J. Pechman
United States District Judge