THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANDRE JONES, et al., <br><br> Plaintiffs, <br><br> v. <br><br> RABANCO, LTD., et al., <br><br> Defendants. | NO. CV03-3195-P <br><br> PLAINTIFFS' RESPONSE TO ALLIED'S MOTION TO DISQUALIFY BOTH LAW FIRMS REPRESENTING THE PLAINTIFFS |

PLTFS' RESP TO ALLIED'S MTN TO DISQ
(CV03-3195-P)
[1355836 v11.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

# I. INTRODUCTION

Allied realizes that in mid-November, this case will go before a jury were it risks significant liability. Instead of defending on the merits, Allied has now moved to an alternative plan: Do everything in its power to have the November trial date continued. Allied has now filed two vexatious motions to disqualify Plaintiffs Counsel. In this case, Allied asks for disqualification because Plaintiffs Counsel interviewed two *former, lower-level, non-speaking agent* employees: Jeanine Decker and Terry Terrell. It is obvious from Allied's brief that the testimony of these two employees is extremely probative. Indeed, their testimony will vastly increase the threat of a substantial punitive damages award. What Allied has completely ignored is that Plaintiffs Counsel is allowed to contact former employees regarding the merits of this case. Moreover, Allied has disregarded this Court's prior determination that it waived any attorney-client privilege related to its alleged investigation by asserting the *Faragher-Ellerth* affirmative defense. Furthermore, Preston Gates & Ellis ("PGE") hypocritically comes before this Court, requesting the most extreme relief, despite the fact that PGE's own attorneys should withdraw because of their involvement with the alleged prompt remedial action.

Allied's motion is completely without merit because: (1) no professional rule of conduct is violated by discussing the facts of this case with former Allied employees; (2) Plaintiffs Counsel properly contacted these former employees pursuant to this Court's order on Allied's affirmative *Faragher-Ellerth* defense; (3) there was no privileged information conveyed to Plaintiffs Counsel during; and (4) Allied has waived all privileges related to the investigation into these claims. Because Allied's motion was filed in a bad faith effort to increase Plaintiffs' costs and further delay trial, Plaintiffs respectfully request sanctions.

PLTFS' RESP TO ALLIED'S MTN TO DISQ - 1
(CV03-3195-P)
[1355836 v11.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

## II.   FACTS

Plaintiffs filed suit on October 24, 2003. In response, Allied claimed that it was not responsible for its manager's actions because it conducted a prompt investigation and sufficient remedial action. It thus claimed protection under the *Faragher-Ellerth* affirmative defense. Answer at ¶ Q (Court Doc# 5). Allied has continued to assert this defense in its multiple motions for summary judgment. *See e.g.*, Mot. re: Burton at 14. (Court Doc# 324). Although this Court has denied Allied's motions based on its affirmative defense, this Court has also indicated that, at least at this point, the questions related to the alleged prompt remedial action are for the jury. *See e.g.*, Order April 25, 2006 at 10-12.

Earlier in this litigation, Plaintiffs brought a motion to compel discovery of documents created during the alleged investigation. Allied refused to provide Plaintiffs with this discovery; however, this Court sided with Plaintiffs, ruling that by asserting the affirmative defense, Allied waived all attorney/client privilege relating to the investigations and that all documentary evidence must be produced regarding the investigations except for those few documents containing opinion work product. In part, this Court held that:

> Once the defense is raised, all materials pertaining to Defendants' fact gathering investigation and remedial measures are "at issue" and any privilege attaching to these documents is waived. This is true for the investigation, whether or not an attorney was involved in planning or advising the course of the investigation. All documents pertaining to remedial measures are at issue whether the measures were initiated by counsel or not. Defendant cannot shield documents associated with the fact gathering investigation or the directives for remedial measures by having an attorney direct the fact finding or ordering the remedial response to the investigation.

Order, Feb. 15, 2005 at 1-2 (Court Doc. # 132). This Court reasoned that Allied's "efforts to shield the substance of its investigation into and remediation of the alleged hostile work environment behind a veil of privilege while simultaneously asserting the <u>Faragher-Ellerth</u> defense [is] in conflict with the principals of fairness which this Court strives to uphold." *Id.* at 5. This Court also acknowledged on page 7 of its Order that:

PLTFS' RESP TO ALLIED'S MTN TO DISQ - 2
(CV03-3195-P)
[1355836 v11.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

Defendants will seek to admit evidence at trial concerning their investigation into this matter without first having allowed Plaintiffs, during discovery, to make an inquiry into the adequacy of the investigation to address the racial discrimination that Plaintiffs experienced. This strategy is patently unfair and would defeat one of the goals of our adversary system by leading the fact-finder to a lopsided version of the truth.

In response to this Order, Allied filed a privilege log. The most current version was filed by Allied on October 12, 2005. Ex. B to Beck Decl. (Court Doc. # 291-1). In this document, Allied sets forth the corporation's decision makers for each of approximately 1,650 documents related to its investigation of discrimination. Neither Jeanine Decker nor Terry Terrell are listed as Allied decision makers. *Id*. Ms. Decker's name does not appear on this 89-page document and Mr. Terrell is only listed as a recipient of certain emails and in two locations cited as a "presumed decision maker." *Id*. The corporation is the only entity that can claim that Mr. Terrell was a speaking agent during his employment, and it has listed him merely as "a presumed decision maker" on two documents.[1] Thus, it is clear that neither Ms. Decker nor Mr. Terrell were speaking agents even when they were employed by Allied.

While Allied's privilege log establishes that neither Ms. Decker nor Mr. Terrell were Allied speaking agents, it also clearly proves that Allied's own counsel are fact witnesses in this case. PGE's Stephanie Pickett, Rebecca Dean, Patrick Madden, Laine Crowder, Steve Peltin, Tricia Johnson, Bradley Leigham, and Ted Weber are all listed as individuals involved in Allied's alleged prompt investigation and remedial measures. *Id*.[2] Thus, PGE is under an ethical duty that requires its withdrawal. This should not come as a surprise to Allied considering Steptoe & Johnson, Allied's Attorneys and Catharine Ellingsen's former firm, published an article in 1999 related to the assertion of this defense and acknowledging that outside counsel

---

[1] Privilege Log pp. 81, 82.

[2] These individuals are identified on the privilege log as follows: Pickett: pp. 2, 30-31, 35, 41, 79, 82-83; Dean pp. 2-3, 6-8, 52-54, 56-57; Madden pp. 4-12, 29-31, 35, 41, 47-54, 56-57, 63, 65-68, 75-77, 82-83; Crowder p.10; Peltin pp. 47-50, 63, 65-67, 75-77; Johnson p. 57, Leigham p. 59, and Weber pp. 50, 52, 57.

PLTFS' RESP TO ALLIED'S MTN TO DISQ - 3
(CV03-3195-P)
[1355836 v11.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA, PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

> should also advise the client of the risk that the investigation attorney may be subject to a deposition or forced to testify at trial. This could result in the unpleasant consequence of forcing the client to incur additional expense by hiring a new attorney to act as trial counsel. *Ethical Rule 3.7 would prohibit an investigating attorney from acting as an advocate in a trial in which he or she is likely to be a necessary witness.*

Monica Goebel and John Nickerson, *Employment & Labor Law: Prompt Remedial Action and Waiver of Privilege*, 35 AZ Attorney 24 (1999) (emphasis added). This is a dilemma that Allied voluntarily created. "Corporate litigants hoping to counter charges of Respondeat superior liability may easily avoid this result in the future either by separating the role of investigator from that of litigator, or by refraining from defending themselves on the basis of reasonable investigation." *Harding v. Dana Transport Inc.*, 914 F. Supp. 1084, 1099 (D.N.J. 1996). If PGE fails to voluntarily withdraw, this Court should consider a *sua sponte* order disqualifying PGE because of its involvement with the claimed investigation.

A.   **Jeanine Decker**

Ms. Decker is a former Allied human resource employee who worked under human resource manager Cheryl Anderson. Ex. A to Beck Decl. During her time at Allied, she was responsible for investigating claims of discrimination. Ex. D to Beck Decl. After Ms. Decker was terminated from her employment with Allied, Plaintiffs Counsel's staff member Truman Castle contacted her to discuss her factual knowledge of the alleged Allied investigation into claims of discrimination in this case. Castle Decl. at ¶ 2. During Mr. Castle's conversations with Ms. Decker, Allied's strategy for settling cases and litigation strategy were never discussed. *Id.* at ¶ 4-6. After Mr. Castle's discussions with Ms. Decker, a statement was prepared and ultimately signed by Ms. Decker. Ex. B to Castle Decl.[3]

---

[3] Allied's complaints about the timing of Plaintiffs production of this statement and the statement regarding Terry Terrell are unpersuasive and undermined by its own conduct in this litigation. Indeed, Allied has consistently refused to provide documents in this case that are clearly discoverable. This Court will recall the multiple motions related to requested documents concerning Allied's claimed investigation. Currently, Allied has refused to produce EEOC complaints from locations other than the Seattle location. These complaints are clearly relevant to the issues of Allied's claimed investigation as well as punitive damages. Unfortunately, Plaintiffs will most likely need to file a motion to compel simply to access these obviously discoverable documents. Here, Plaintiffs provided Allied with a copy of this statement and the Terry Terrell statement in a

PLTFS' RESP TO ALLIED'S MTN TO DISQ - 4
(CV03-3195-P)
[1355836 v11.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

**B.  Terry Terrell**

Mr. Terrell is also a former Allied human resource employee. Castle Decl. at ¶ 8-9. Mr. Castle interviewed Mr. Terrell after his termination from Allied. *Id.* During this interview, Allied's strategy for settling cases and litigating cases was not discussed. *Id.* at ¶ 12-13. After their discussion, Mr. Castle produced notes memorializing the interview of Mr. Terrell. Ex. C to Castle Decl.[4]

**C.  Counsel's Precautions to Assure Ethical Conduct.**

Mr. Castle was the only individual that spoke with Ms. Decker or Mr. Terrell regarding the merits of this case. Moote Decl. ¶ 2-3.[5] During Mr. Castle's discussions with these witnesses, no attorney/client privileged information was disclosed. Castle Decl. at ¶ 4, 7, 11, 14, 15, 16. In fact, Counsel took great precaution to ensure that no privileged information was conveyed. Prior to contacting these former employees, Mr. Moote discussed with Mr. Castle the importance of limiting the interviews to factual information regarding Allied's investigation and to not inquire into privileged matters. Moote Decl. at ¶ 4. No documents were acquired from Mr. Terrell and the only document acquired from Ms. Decker was a copy of her human resource training manual.[6] Ex. A to Castle Decl.; *Id* at ¶ 7, 14. Because no documents were produced, the work product privilege is not at issue in this motion.[7]

---

timely fashion. Ms. Decker's statement was Plaintiffs work product. After drafting these statements, Plaintiffs decided to provide them to human resource expert Ms. Bonnell. Shortly thereafter, these documents were then provide to Allied. Allied received these statements prior the depositions of Ms. Bonnell, Ms. Decker, and Mr. Terrell, and therefore, Allied has no reason to complain.

[4] Plaintiffs respectfully file the Decker and Terrell statements under seal merely in order to limit the already acrimonious nature of this litigation. These statements are not privileged, and therefore, if this Court denies Allied's motion, Plaintiffs respectfully request that the Clerk remove these documents from under seal and make these statements publicly available as are the other records previously filed with this Court which are not specifically covered by a protective order.

[5] Paralegal Heather Spencer has contacted Ms. Decker; however, these conversations were limited to finding an agreeable time for her deposition which has yet to occur. Spencer Decl. at ¶ 2-5.

[6] This manual is not work product. Allied already produced this manual. Ex. G-120 to Beck Decl.

[7] The codified work product doctrine only protects documents and other tangible items. Fed. R. Civ. P. 26(b)(3) (protecting "documents and tangible things" as trial preparation materials). While the Supreme Court indicated

PLTFS' RESP TO ALLIED'S MTN TO DISQ - 5
(CV03-3195-P)
[1355836 v11.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

### III. DISCUSSION

"[B]ecause motions to disqualify are often brought for tactical reasons, they should be viewed with caution." *Amatuzio v. Gandalf Sys. Corp.*, 932 F. Supp. 113, 116 (D.N.J. 1996). Here, Allied bears the heavy burden of establishing that this Court should impose sanctions for Plaintiffs Counsel's conduct. *Phinney v. Paulshock*, 181 F.R.D. 185, 197 (D. N.H. 1998), *affirmed*, 199 F.3d 1 (1st Cir. 1999) (holding "the burden of proof is on the party seeking the sanction."). Allied also bears the burden of establishing that disqualification is the appropriate remedy – there is no lesser remedy that is sufficient. *In re Firestorm 1991*, 129 Wn.2d 130, 139, 142, 916 P.2d 411 (1996).[8] "Disqualification of counsel is a drastic remedy that exacts a harsh penalty from the parties as well as punishing counsel; therefore, it should be imposed only when absolutely necessary." *Id* at 139. As set forth below, Allied cannot come close to establishing any of these prerequisites. Instead of disqualifying Plaintiffs Counsel, this Court should impose sanctions against Allied and its counsel for filling this frivolous and vexatious motion.

### A. There is no ethical prohibition on contacting former employees.

The Rules of Professional Conduct state that "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a *party* the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by lawyer to do so." RPC 4.2. (emphasis added). Under well established law, it is completely appropriate to contact *current* employees who are not speaking agents for a corporate defendant. *Palmer v. Pioneer Inn Associates*, 338 F.3d 981, 988 (9th Cir. 2003) (holding that contacting a current non-speaking agent employee of the

---

that under ordinary circumstances it would be improper to force an attorney to recite or recreate statements from witnesses, this type of protection is not at issue in the motion filed by Allied. *Hickman v. Taylor*, 329 U.S. 495, 512-13 (1947).

[8] Allied has completely failed to brief this issue or even discuss why its request for disqualification is appropriate. *Wash. St. Physicians Ins. v. Fisons*, 122 Wn.2d 299, 355-56, 858 P.2d 1054 (1993).

PLTFS' RESP TO ALLIED'S MTN TO DISQ - 6
(CV03-3195-P)
[1355836 v11.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

corporate defendant does not violate Rule of Professional Conduct 4.2). Additionally, an adverse party can interview former employees of a corporate defendant regardless of whether the former employee was a speaking agent for the company during his or her time of employment. *Wright v. Group Health Hosp.*, 103 Wn.2d 192, 201, 691 P.2d 564 (1984) ("We hold *current* Group Health employees should be considered "parties" for the purposes of the disciplinary rule if, under applicable Washington law, they have managing authority sufficient to give them the right to speak for, and bind, the corporation. Since former employees cannot possibly speak for the corporation, we hold that CPR DR 7-104(A)(1) does not apply to them.") (emphasis added). Even the ABA Opinion relied on by Allied, supports Plaintiffs' position. "[I]t is the opinion of the Committee that a lawyer representing a client in a matter adverse to a corporate party that is represented by another lawyer may, without violating Model Rule 4.2, communicate about the subject of the representation with an unrepresented former employee of the corporate party without the consent of the corporation's lawyer." Defendants' Br. at 17.[9] One federal court has summarized some of the policy reasons behind this rule as: (1) counsel must be allowed to engage in informal discovery to evaluate the merits of a claim and any defenses to the claim; (2) relying solely on formal discovery is cost prohibitive; (3) relying solely on formal discovery "can create protracted and quarrelsome discovery disputes which consume finite judicial resources;" (4) prohibiting ex parte

---

[9] Allied makes several material misrepresentations is its motion. First, Allied cites three formal ABA opinions and then misstates their content. For instance, Allied claims that ABA formal opinion No. 91-359 (1991) states that acquiring work product or attorney client privileged documents *"would* violate Rule 4A[.]" Allied's Br. at 8. (emphasis added). However, there is no such statement anywhere in this opinion. The closest statement in the opinion is that intentionally seeking to procure privileged documents from a former employee "could" violate Rule 4.4." *Id.* at 17. This is not a minor oversight. The extent to which the law Allied cites is unsettled is obviously relevant to deciding a motion as serious as the one before this Court. The other two opinions cited by Allied are irrelevant because they deal with the transfer of privileged documents and this did not occur in this case. Second, Allied cites *Richards v. Jadin*, 168 F. Supp.2d 1195, 1200 (W.D. Wash. 2001) and unequivocally states that this District "requires lawyers practicing in this District to abide by ABA Opinions . . . ." Allied's Br. at 8 fn. 7. While it would be fair to say that this District considers ABA opinions, there is no statement in *Richards* or elsewhere that indicates that this District requires attorneys to practice in conformance with ABA opinions. On some issues the RPCs and ABA opinions may differ. This Court should note that in *Richards*, the Court primarily based its decision on the Washington Rules of Professional Conduct. 168 F. Supp.2d at 1200-1203.

PLTFS' RESP TO ALLIED'S MTN TO DISQ - 7
(CV03-3195-P)
[1355836 v11.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

communications would result in potentially meritorious cases not being filed; and (5) former employees will likely be less forthcoming with relevant information during formal discovery because of intimidation from the former employer. *Cram v. Lamson & Sessions Co.*, 148 F.R.D. 259, 261-262 (D. Iowa 1993).

Because both Ms. Decker and Mr. Terrell were former Allied employees when contacted, Allied does not have a good faith basis, in law or fact, for filing this motion. Allied does not claim that Mr. Terrell provided privileged information, Allied's Br. at 2 fn. 3, and therefore, he is not discussed further. Concerning the remaining claims, Allied's vague and unsupported accusations that Plaintiffs Counsel solicited attorney-client privileged information are simply false. Allied has filed this motion in complete disregard of LR Civil Rule 7(b)(1), which unambiguously provides that "[i]f the motion requires consideration of facts not appearing of record, the movant shall also serve and file copies of all affidavits, declarations, photographic or other evidence presented in support of the motion." Allied failed to supply this Court with a record; its motion is procedurally defective. On the merits, Allied's motion is baseless because Counsel did not illicit any privileged information.

**B.     Plaintiffs Counsel was entitled to contact these fact witnesses pursuant to this Court's previous order on discovery.**

This Court has previously held that Allied's "efforts to shield the substance of its investigation into and remediation of the alleged hostile work environment behind a veil of privilege while simultaneously asserting the Faragher-Ellerth defense [is] in conflict with the principles of fairness which this Court strives to uphold." Order, Feb. 15, 2005 at 5 (Court Doc. # 132). Moreover, this Court has held that "[o]nce the defense is raised, all materials pertaining to Defendants' fact gathering investigation and remedial measures are 'at issue' and any privilege attaching to these documents is waived. This is true for the investigation, whether or not an attorney was involved in planning or advising the course of the investigation." *Id.* at 1.

PLTFS' RESP TO ALLIED'S MTN TO DISQ - 8
(CV03-3195-P)
[1355836 v11.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

Ms. Decker and Mr. Terrell are both former Allied human resource employees charged with undertaking and implementing Allied's alleged prompt investigation.[10] Ex. C to Beck Decl.; Ex. E to Beck Decl. (Marsh Dep at 20:10-17; 171:13-25); Ex. F to Beck Decl. (Harbert Dep. at 36:15-25; 37; 38:1-17). As Allied made its investigation an issue, this Court properly determined that Allied cannot "shield the substance of its investigation." Order, Feb. 15, 2005 at 5 (Court Doc. # 132). Plaintiffs properly contacted these former employees to determine whether Allied's affirmative defense was viable. Through this motion, Allied ignores this Court prior order on discovery. Allied's own prior briefing shows the extreme hypocrisy of its current position. Not long ago, Allied requested the severe relief of judicial estoppel arguing that this Court must "protect against a litigant playing fast and loose with the courts." Allied's Mot. re: Hutchins at 6 (internal quotations and citations omitted) (Court Doc.# 312). In fact, Allied is the party who is clearly playing fast and loose. To deter this conduct, this Court should sanction Allied for filing this frivolous motion.

### C. No confidential information was disclosed.

For information to be considered attorney/client privilege it must be a confidential communication between a party and his or her attorney made for the purpose of seeking legal advice or for the purpose of providing legal advice.

> The privilege applies only if (1) the asserted holder of the privilege is or sought to be come a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

---

[10] Allied claims that after receiving the letter from the NAACP, it "launched an investigation, which was undertaken by HR employees and supervised by in-house counsel." Order, Feb. 15, 2005 at 2.

PLTFS' RESP TO ALLIED'S MTN TO DISQ - 9
(CV03-3195-P)
[1355836 v11.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA, PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

*United States v. United Shoe Mach. Corp.*, 89 F. Supp. 357, 358-359 (D. Mass. 1950). "The attorney-client privilege is strictly and narrowly construed for the quite obvious reason that it has the potential to frustrate the court's truth-seeking function." *Amatuzio*, 932 F. Supp. 116.

For Allied to prevail, it must first establish that there were communications between Ms. Decker and an attorney or an attorney's assistant that were disclosed – revealing conversations between former employees does not implicate any privilege. Here, the conversations Ms. Decker describes in her statement are not protected by the attorney-client privilege because they were not made for the purpose of seeking or providing legal advice. In her statement, Ms. Decker describes conversations with both Steve Helm and Catherine Ellingsen. Each of these conversations is analyzed below.

The statement regarding Mr. Helm is described on pages seven and eight and in essence states that the two had conversations regarding the ineffective working relationship between Allied's legal department and its human resource department. Ex. B to Castle Decl. Because these conversations are not ones seeking legal advice or providing legal advice, the attorney-client privilege is inapplicable.

The other attorney that Ms. Decker describes having conversations with is Ms. Ellingsen. Again, the conversations between Ms. Decker and Ms. Ellingsen relate to the ineffective working environment at Allied. Plaintiffs anticipate that Allied will argue that Ms. Ellingsen's statement regarding policies of preventing a paper trail is attorney-client protected and that Ms. Ellingsen's statement requesting an investigation into complaints of discrimination is attorney-client protected. However, these statements by Ms. Ellingsen are not ones made "for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding" as required for protection under the attorney-client privilege. *United Shoe Mach. Corp.*, 89 F. Supp. at 358-359. These are statements made by Ms. Ellingsen related to the day-to-day operation of the human resource department and involve investigations not legal advice – the exact type of issues Allied placed

PLTFS' RESP TO ALLIED'S MTN TO DISQ - 10
(CV03-3195-P)
[1355836 v11.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

at issue in asserting its affirmative defense. More to the point, Allied has already openly acknowledged during depositions that it was Allied's policy to prevent a paper trial. Ex. D to Beck Decl. (Robischaud Dep. at 5:22-25; 20:4-7). Allied's motion should be denied.

### D. Allied waived any attorney/client privilege by asserting the Faragher-Ellerth affirmative defense.

Even assuming that some of the conversations that Ms. Decker relayed were considered attorney client privileged, at one point, Allied waived any privilege by asserting its affirmative defense. As this Court has already held, "[o]nce the defense is raised, all materials pertaining to Defendants' fact gathering investigation and remedial measures are 'at issue' and any privilege attaching to these documents is waived. This is true for the investigation, whether or not an attorney was involved in planning or advising the course of the investigation." Order, Feb. 15, 2005 at 5 (Court Doc. # 132). The interviews of Ms. Decker and Mr. Terrell were limited to learning about Allied's practices and procedures for investigating complaints, the investigation that allegedly occurred in this case, and their termination from the company. Allied opened the door for discovery on these issues by asserting this affirmative defense. It cannot now be heard to complain about the obvious repercussions of having sunshine placed on its internal investigative process by the two former employees it claims were responsible for the investigation.[11]

### E. Plaintiffs' respectfully request that this Court impose sanctions.

This Court has the inherent power to sanction vexatious conduct. "[C]ourts retain the inherent power to sanction bad faith conduct during litigation." *Western Sys v. Ulloa*, 958 F.2d 864, 873 (9th Cir. 1992). Here, Allied did not have a good faith basis in law or fact to file this motion to disqualify Plaintiffs Counsel. Allied ignored this Court's rules on supporting motions with evidence and instead attempted to mislead this Court by offering

---

[11] Allied's initial disclosures list both Ms. Decker and Mr. Terrell as individuals knowledgably about the alleged investigation. Beck Decl. at Ex. C-97, C-98.

PLTFS' RESP TO ALLIED'S MTN TO DISQ - 11
(CV03-3195-P)
[1355836 v11.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

inaccurate declarations describing the statements. Importantly, this is Allied's *second* motion to disqualify Counsel. Plaintiffs have taken Allied's allegations very seriously and have thus dedicated substantial resources to responding to its motion.[12] Because this motion was filed for improper purposes, this Court should impose monetary sanctions against Allied and its Counsel. In *Wold v. Minerals Engineering Co.*, 575 F. Supp. 166, 167 (D. Colo. 1983), the court imposed monetary sanctions for conduct substantially similar to that currently before this Court. There, the court was faced with a frivolous motion to disqualify counsel and a request by the responding party for terms. The court held that the "Motion to Disqualify was interposed for improper purposes, namely, to harass opposing counsel, to cause unnecessary delay in this lawsuit and to increase needlessly the cost of this litigation." *Id*. Thereafter, the court imposed sanctions against the moving party, reasoning "I further find and conclude that this is an appropriate case in which to invoke 28 U.S.C. Section 1927 and the inherent powers of this court to regulate the conduct of attorneys who practice here." *Id*. at 167-168.

This matter is no different from *Wold*. Allied should have never filed this motion. It was filed for solely strategic purposes and Allied should be sanctioned for such conduct.

## IV. CONCLUSION

Plaintiffs respectfully request that this Court deny Defendants' motion and impose sanctions against Allied and its counsel.

Dated this 31st day of July, 2006.

                GORDON, THOMAS, HONEYWELL, MALANCA, PETERSON & DAHEIM LLP

                By    s/James W. Beck, WSBA No. 34208
                        Darrell L. Cochran, WSBA No. 22851
                        James W. Beck, WSBA No. 34208
                        Attorneys for Plaintiffs

---

[12] After Plaintiffs Counsel has finished expending time responding to this motion, including the requested hearing, Plaintiffs respectfully request an opportunity to present evidence of the time and costs incurred.

PLTFS' RESP TO ALLIED'S MTN TO DISQ - 12
(CV03-3195-P)
[1355836 v11.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA, PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

# CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2006 I electronically filed the foregoing Plaintiffs' Response to Allied's Motion to Disqualify Both Law Firms Representing the Plaintiffs, along with accompany Declaration of James Beck with Exhibits, Declaration of Truman Castle with Exhibits, Declaration of Heather Spencer, Declaration of Peter Moote, and Proposed Order with the Clerk of the Court using the CM/EDF system, which will send notification of such filing to the following:

- Peter Moote: moote@petermoote.com
- Chris Farias: chris.farias@stokeslaw.com
- Patrick M. Madden: pmadden@prestongates.com
- Trilby C E Robinson-Dorn: tribyrd@prestongates.com
- Daniel P. Hurley: DanielH@prestongates.com
- Mark S. Filipini: markf@prestongates.com
- Thomas E. Kelly, Jr.: tomk@prestongates.com
- H R Van Valkenburgh: rvusa@earthlink.net

and mailed by first class United States mail, postage prepaid, to the following:

Carl Passmore
P. O. Box 1066
215 Whitsel Street
Orting, WA  98360

                    s/James W. Beck
James W. Beck, WSBA No. 34208
Darrell L. Cochran, WSBA No. 22851
James W. Beck, WSBA No. 34208
Attorneys for Plaintiffs

PLTFS' RESP TO ALLIED'S MTN TO DISQ - 13
(CV03-3195-P)
[1355836 v11.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565