1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

ANDRE JONES, et al.,

8                                    Plaintiff(s),

No. C03-3195P

9     v.

10    RABANCO, Ltd., et al.,

ORDER ON DEFENDANTS' FIRST
MOTION FOR
DISQUALIFICATION OF
COUNSEL

11                                   Defendant(s).

12
13
14          This matter comes before the Court on the parties' in camera submissions to the Court

15    regarding the issue of whether or not Plaintiffs' counsel from the Gordon, Thomas, Honeywell,

16    Malanca, Peterson & Daheim ("GTH") should be disqualified because of an alleged current or former

17    representation of Rabanco's wholly-owned subsidiary Regional Disposal Corporation ("RDC").

18    Having reviewed the briefing on this issue, as well as all of the documentation submitted, and having

19    heard oral argument on the matter, the Court GRANTS Defendants' motion to disqualify the

20    attorneys for Plaintiffs from GTH.  The Court finds that RDC is a current client of GTH and that

21    RDC and Rabanco as entities are too interrelated to avoid an appearance of impropriety in this

22    matter.  The law is clear that lawyers may not represent an interest adverse to a current client.

23    For this reason, GTH must be disqualified, effective as of the date of this order.

BACKGROUND

24
25          On February 20, 2006, Plaintiffs' attorney Peter Moote associated GTH lawyers Darrell

26    Cochran, Maria Lorena Gonzalez, and Walter Beck to help him in the representation of the thirteen

Plaintiffs in this action. (Dkt. No. 307).  In early March, Stephanie Bloomfield of the GTH firm ran a conflicts check and found that GTH had represented RDC on a long-haul waste contract dispute against LRI in Pierce county from 2000 to 2002.[1]  The records attached to Ms. Bloomfield's declaration reflect that when she did the conflicts check, three open matters regarding the RDC/LRI dispute appeared, but she states that she considered that matter to be completed and concluded that there was no conflict. (Bloomfield Decl. at 1 and Ex. A).

In May of this year Jeff Andrews, a Senior Vice President of Allied Waste, was in Seattle for a mediation in this lawsuit and recognized GTH as the law firm that he believed represented Rabanco in Pierce County.  In support of this motion, Rabanco has also submitted several affidavits from Rabanco executives expressing the view that the affiants understood GTH to be Rabanco and Allied Waste's counsel in Pierce County. Although the parties agreed to disregard the potential conflict for the purposes of the mediation, Defendants now bring this motion for formal disqualification of GTH.

GTH entered into representation of RDC, Rabanco, and Allied in 2000 regarding a dispute with LRI in Pierce County over a contract to long haul waste to a landfill in Klickitat county. RDC is wholly owned by Rabanco and shares staff and office space with its parent.  Although GTH claims that only RDC was formally its client, many of the internal memoranda between GTH staff refer to the matter as "Rabanco." (See e.g. Verhoef Decl., Ex. D). Former Rabanco District Manager Bob Berres hired GTH.  He and Don Swierenga were key contacts at RDC and Rabanco during the LRI litigation.  Both of these men are also involved in the current case before the Court and could potentially be called as witnesses. The main attorneys assigned to the case were Dennis Harlowe, Ronald Leighton, and Brad Maxa.  Tim Thompson, a non-lawyer lobbyist, was also assigned to the case.  In addition, up to 24 attorneys and paralegals in total worked on the RDC/LRI case at GTH. Over the course of the case, which settled on the eve of arbitration, GTH billed RDC for $567,371.62

---

[1]The Court notes that appearing in court and giving notice of representation before a conflicts check has been run is not advisable on any level.

in legal costs.  The contract signed by RDC and LRI settling the case expires in 2011. (Defs' Mot. at

1). The notice provision under that contract provides:

> 12.11 Notice
>
> All communications under this Agreement must be in writing and are duly given when (a) delivered by hand (with written confirmation of receipt), (b) sent by facsimile (with written confirmation of receipt), provided that the communication also is mailed by certified or registered mail, return receipt requested, or (c) received by the addressee, if sent by a nationally recognized overnight delivery service (receipt requested).  The appropriate addresses and facsimile numbers for receipt are set forth below.  A party may designate by notice other addresses and facsimile numbers.
>
> If to RDC:      Regional Disposal Company
>                        c/o WJR Environmental, Inc.
>                        54 South Dawson Street
>                        Seattle, WA 98314
>                        Attention:_____
>                        Facsimile No: (206) 332-7600
>
> With a copy to:
>
>                        Gordon, Thomas, Honeywell, Malanca,
>                        Peterson & Daheim, P.L.L.C.
>                        1201 Pacific Ave., Suite 2200
>                        Post Office Box 1157
>                        Tacoma, Washington 98373
>                        Attention: Dennis S. Harlowe
>                        Facsimile No.: (253) 620.6565

(Harlowe Decl., Ex. E).  Shortly after this case settled, Dennis Harlowe, Ronald Leighton, and Tim

Thompson all left GTH. When they left, GTH assigned B.B. Jones as the new billing partner for the

this matter.  Additionally, Brad Maxa continues to be a partner at the firm and several other attorneys

and staff who played lesser roles in the RDC/LRI matter are still employed at GTH.  Brad Maxa has

stated that he has "explicitly refrained from any contact with the attorneys working on the Jones case.

. ." (Maxa Decl. at 9).  Although GTH handled a few small matters regarding issues with the

RDC/LRI contract after the case settled, Mr. Maxa also states that neither he nor anyone at GTH has

done work for  RDC, Rabanco, or Allied on any matter since November 2002, despite the fact that

these organizations have been involved in several legal matters since that time. (Id. at 4).  Mr. Maxa

1   notes that RDC and Rabanco did not contact GTH about defending them in the current lawsuit. (Id.).

2

3                                                        ANALYSIS

4   **I.  Framework Under the Rules of Professional Responsibility**

5          It is the Court's duty to resolve allegations that arise concerning attorney conflicts of interest

6   because the Court is authorized to supervise the conduct of the members of its bar. Oxford Systems,

7   Inc. v. Cellpro, Inc., 45 F. Supp. 2d 1055, 1058 (W.D. Wash. 1999).  The conduct of the attorneys

8   practicing before this Court is governed by the Washington Rules of Professional Conduct ("RPC").

9   Id.  The burden of proof in such matters rests with the firm whose disqualification is sought.  Amgen,

10  Inc. v. Elanex Pharmaceuticals, Inc., 160 F.R.D. 134, 140 (1994).

11  **II.  Is RDC a Current Client of GTH?**

12         Under Washington RPC 1.7,

13                 A lawyer shall not represent a client if the representation of that client will be directly
                   adverse to another client, unless:
14                         (1) The lawyer reasonably believes the representation will not adversely affect
                           the relationship with the other client; and
15                         (2) Each client consents in writing. . .

16  RPC 1.7(a).  Whether or not a current attorney-client relationship exists is a question of fact. Bohn v.

17  Cody, 119 Wn. 2d 357, 363 (1992); See also Oxford Systems, Inc. v. Cellpro, 45 F. Supp. 2d 1055,

18  1059 (W.D. Wash. 1999).  "The essence of the attorney/client relationship is whether the attorney's

19  advice or assistance is sought and received on legal matters." Bohn, 119 Wn. 2d at 363. Washington

20  courts have held that another key factor that is determinative of whether or not the attorney-client

21  relationship exists is the subjective belief of the client. Id.  However, this belief must be reasonably

22  based on the factual circumstances of a particular case. Id.  Looking at all of the circumstances before

23  the Court on this motion, the Court finds that Defendants' belief that GTH is their representative in

24  Pierce county is a reasonable one.

25         The Court construes the inclusion of GTH as a contact under the contract settling the LRI

26  matter as evidence that there was intent for GTH to represent RDC and Rabanco on any future issues

ORDER - 4

1   that might arise under that contract.  Indeed, GTH does not deny that it performed this type of work

2   for RDC shortly after the settlement. The Court also notes the fact that the LRI  matter remains an

3   open one in the GTH files.  The Court views the failure to formally close the LRI matter as evidence

4   that GTH had intended to keep RDC and Rabanco as clients and hoped to represent them on future

5   disputes.  This conclusion is strengthened by the fact that GTH is paying for the storage of 49

6   bankers boxes of documents related to the LRI matter in GTH's off-site storage facility, thereby

7   making itself available to promptly respond to future requests from RDC for legal work.

8           Although the Court acknowledges GTH's argument that neither RDC, Rabanco, nor Allied

9   Waste has contacted the firm in over  three years, it does not find this argument by itself persuasive.

10  GTH also asserts that the main attorneys at the firm who represented RDC are now gone, including

11  Mr. Harlowe, whose name is provided in the contract as the contact person at GTH should a dispute

12  arise under the RDC/LRI contract.  The fact that these attorneys are longer at the firm, however,

13  does not eliminate any responsibility that GTH might have to RDC under that contract. Comment

14  Four to ABA Model Rule 1.3, outlining an attorney's duties of diligence, provides that "[d]oubt

15  about whether a client-lawyer relationship still exists should be clarified by the lawyer, preferably in

16  writing, so that the client will not mistakenly suppose the lawyer is looking after the client's affairs

17  when the lawyer has ceased to do so."  In this spirit, the Court finds that GTH could easily have sent a

18  letter to RDC asking it to amend this contact information, or informing it of Mr. Harlowe's new

19  contact information, if the firm had really not wished to serve as a contact point under the contract.

20  However, there is no evidence currently before the Court that GTH took such a step.  Without

21  evidence that GTH took steps to amend the notice provision in the contract, the Court finds that

22  inclusion of GTH as a point of contact in the contract, along with the other circumstances outlined,

23  created a reasonable belief on the part of the client that the firm named in the contract was still

24  representing it on matters related to the contract.

25          Other courts have held that "once established, a lawyer-client relationship does not terminate

26  easily.  Something inconsistent with the continuation of the relationship must transpire in order to end

1   the relationship." <u>SWS Financial Fund A v. Salomon Bros., Inc.</u>, 790 F. Supp. 1392, 1398 (N.D. Ill.

2   1992).  The Court can find nothing in this record that constitutes an event inconsistent with the

3   continuation of the attorney-client relationship between GTH and RDC.  When asked by the Court at

4   oral argument what this event could be, GTH attorney Stephanie Bloomfield responded, "Silence.

5   Three years of silence."  This answer was meant to reference the break in contact between GTH and

6   RDC.  However, the Court does not find that three years of no contact between an attorney and

7   client, without more, constitutes an event inconsistent with representation.  As noted, there was no

8   evidence submitted that formal notices were sent to RDC when either Mr. Leighton or Mr. Harlowe

9   left the firm; the files were not closed electronically; nor were RDC's documents returned to them.

10  On the contrary, GTH assigned a new billing partner, B.B. Jones, to the matter when Leighton and

11  Harlowe left and kept RDC's documents in storage.  The Court finds that these actions are consistent

12  with the expectation by a firm that it would be representing an entity in future disputes.  Indeed, GTH

13  admits that RDC did return to it on subsequent occasions during 2001 and 2002 when there were

14  issues with the contract between it and LRI.

15          GTH argues vigorously that it should not be disqualified from representation because the

16  current case is not "substantially related" to the LRI matter.  In making this argument, GTH relies

17  heavily on <u>State of Washington v. Hunsaker</u>, 74 Wn. App. 38 (1994) for support.  However, this case

18  concerns a firm's representation of a person adverse to a *former* client.  The Court in this matter does

19  not reach the analysis for attorney disqualification in instances where a the firm is adverse to a former

20  client under RPC 1.9 because the Court finds that RDC is a current client of GTH's under RPC 1.7.

21  **III.  Can GTH be considered to Represent Rabanco and/or Allied?**

22          The Court's inquiry does not end with the finding that GTH is a current representative of

23  RDC.  The Court must determine whether it is also represents Rabanco and/or Allied.  RDC is a

24  wholly-owned subsidiary of Rabanco and Rabanco is wholly owned by Allied Waste, Inc. RDC and

25  Rabanco share office space, as well as employees.  Some of the RDC executives, such as Bob Berres

26  and Don Swierenga, who submitted affidavits in support of this motion and who communicated with

GTH during the LRI matter were also executives at Rabanco during the time period at issue in the employment discrimination case before this Court.  Additionally, many of the internal memos of attorneys at GTH who worked on the LRI matter referred to Rabanco as if it were their client. Although there is not a large body of case law in this area, courts tend to take a pragmatic approach to the "consequences of the attorney's relationship with the corporate family."  Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft, 69 Cal. App. 4th 223, 253 (1999).  The Ninth Circuit has held that "[f]iduciary obligations and professional responsibilities may warrant disqualification of counsel in appropriate cases even in the absence of a strict contractual attorney-client relationship." Trone v. Smith, 621 F. 2d 994, 1002 (9th Cir. 1980).  Here, the Court finds that given the overlap of staff and the intermingling of operations, especially between RDC and Rabanco, the appearance of impropriety would be too great if GTH were to continue to represent Plaintiffs against Rabanco and Allied in this matter.  For this reason, the Court finds that it must disqualify the GTH firm as representatives for Plaintiffs in the case currently before this Court, effective as of the date of this order.

The Clerk of the Court shall direct a copy of this order be sent to all counsel of record.

Dated: August 3, 2006

Marsha J. Pechman
United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

ORDER - 8