UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANDRE JONES, et al.,

        Plaintiff(s),

v.

RABANCO, Ltd., et al.,

        Defendant(s).

No. C03-3195P

ORDER ON DEFENDANTS'
SECOND MOTION FOR
DISQUALIFICATION OF
COUNSEL

This matter comes before the Court on Defendants' Motion to Disqualify Counsel (Dkt. No. 555). The Court previously ordered that Plaintiffs' counsel from Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim is disqualified from this matter. (Dkt. No. 579). Accordingly, this Order will only address whether or not Plaintiffs' counsel from the Peter Moote law firm should also be disqualified. Having reviewed the parties' briefs and all documentation associated therewith, the Court DENIES Defendants' Motion. Plaintiffs' counsel from the Peter Moote law firm shall not be disqualified from representing Plaintiffs in this case. The Court also DENIES Plaintiffs' call for sanctions.

## BACKGROUND

Jeanine Decker and Terry Terrell are both former Allied Waste human resources employees who were identified by Defendants in answers to interrogatories as being individuals who may have discoverable information regarding the allegations in this case. Ms. Decker worked at Allied's corporate office in Phoenix, AZ from 2000-2003, when she was terminated. Mr. Terrell worked as a

ORDER - 1

Regional HR representative for Allied from 2001 until 2004, part of which he spent in Bellevue, WA, when he also was terminated.

Truman Castle, investigator for Plaintiffs' attorneys, contacted both Ms. Decker and Mr. Terrell in connection with this case. Mr. Castle had contact with both outside of the presence of Defendants' attorneys. Defendants now claim that during these contacts, Mr. Castle specifically solicited and received Defendants' privileged attorney-client information from both Ms. Decker and Mr. Terrell. On this basis, Defendants now call for the disqualification of all of Plaintiffs' counsel on the theory that the taint of this privileged information cannot be un-remembered by Mr. Moote and his associates and will prejudice the trial of this case. Plaintiffs' counsel insists that it took special precautions to avoid receiving any information regarding privileged communications from Ms. Decker and Mr. Terrell. Mr. Castle has submitted an affidavit stating that he did not receive any information regarding privileged attorney-client information, nor did he receive any information regarding Defendants' litigation or settlement strategy (Castle Decl. at ¶¶ 4-14). Plaintiffs contend that this motion is frivolous and was not filed in good faith. Accordingly, they are requesting sanctions.

ANALYSIS

**I. Framework Under the Rules of Professional Responsibility**

It is the Court's duty to resolve allegations that arise concerning attorney conflicts of interest because the Court is authorized to supervise the conduct of the members of its bar. Oxford Systems, Inc. v. Cellpro, Inc., 45 F. Supp. 2d 1055, 1058 (W.D. Wash. 1999). The conduct of the attorneys practicing before this Court is governed by the Washington Rules of Professional Conduct ("RPC"). Id. The burden of proof in such matters rests with the firm whose disqualification is sought. Amgen, Inc. v. Elanex Pharmaceuticals, Inc., 160 F.R.D. 134, 140 (1994). Nonetheless, other courts have cautioned that motions to disqualify are often brought for the purpose of gaining a tactical advantage and should be viewed with some suspicion. Amatuzio v.Gandalf Systems Corp., 932 F. Supp. 113, 116 (D.N.J. 1996).

ORDER - 2

## II. Attorney Communications with Other Parties

Washington RPC 4.2 addresses communications with a person represented by counsel. RPC 4.2(a) provides, in pertinent part: "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter. . ." The leading case in Washington on the question of who is a "party" under this rule, is Wright v. Group Health Hospital, 103 Wn. 2d 192 (1984). The Washington State Supreme Court held, in Wright that the, "best interpretation of 'party' in litigation involving corporations is only those employees who have the legal authority to 'bind' the corporation in an evidentiary sense." Wright, 691 Wn. 2d at 200. These employees are also known as the employees who have "speaking authority" for the corporation. Id. The factual scenario presented in Wright concerned plaintiff's desire, in that case, to conduct ex-parte interviews of Group Health nurses who may have been witness to an alleged malpractice. In holding that the nurses could be interviewed, the Wright court commented that, "[i]t is not the purpose of [Rule 7-104(A)(1)] to protect a corporate party from the revelation of prejudicial facts." Id. The state Supreme Court also held that Rule 7-104(A)(1) had no application to former employees, who could not speak for or bind the corporation. Id. at 201.

Under the current interpretation of RPC 4.2, neither Ms. Decker nor Mr. Terrell could be considered speaking agents of Allied or any of its subsidiaries because they are both former employees. For this reason, Mr. Castle did not breach RPC 4.2 when he made contact with these witnesses.

## III. Was Privileged Information Disclosed?

Defendants argue that even if Ms. Decker and Mr. Terrell are not "parties" represented by defense counsel in this litigation, ethical rules mandate the disqualification of an attorney who has solicited and received the opposing party's privileged information from a witness. Defendants rely on several formal ABA opinions that they have submitted along with their motion for support.

ABA Formal Ethics Opinion 91-359 states, for example, that the "adversary attorney must be careful not to seek to induce the former employee to violate the privilege attaching to attorney client

ORDER - 3

communications. . .[s]uch an attempt could violate Rule 4.4." The Defendants do not cite any Washington Rule of Professional Responsibility in support of their motion. However, Washington RPC 4.4 is similar to the ABA Model Rule of the same number and provides:

> In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.

(Washington RPC 4.4). ABA Formal Ethics Opinion 97-408, also cited by Defendants, states that a lawyer found to be violating Rule 4.4 may be subject to sanctions.

The Supreme Court of Washington addressed a similar issue in In re: Firestorm, 129 Wn. 2d 130 (1996), when it decided that an attorney's contact with the opposing party's expert witness did not merit disqualification. The Firestorm court found that counsel in that case had violated Fed. R. Civ. P. 26 through contact with the opposing party's witness, but did not disqualify the attorney because no information regarding privileged communications or work product was conveyed. In rendering its opinion the Court observed, "'[f]acts, as such, remain discoverable, even though they may be embodied in a protected document' or conversation." Id. at 141. The Ninth Circuit agreed with this approach. Palmer v. Pioneer Assoc., Ltd., 338 F. 3d 981, 988 (9th Cir. 2003).

The Defendants have provided a copy of Ms. Decker's statement in which they have highlighted the sections that they believe breach their attorney-client or attorney work product privileges. (See Suzanne Thomas Decl., Ex. 2). In the matter before the Court, Defendants allege that Ms. Decker's observations regarding ongoing litigation that she monitored are privileged. However, the fact that this litigation was happening is not privileged. Neither Ms. Decker's nor Mr. Terrell's declarations appear to reflect any information that was conveyed from in-house or outside counsel regarding Allied's litigation. Defendants also object to Ms. Decker's description of employment practices that she apparently described to Mr. Castle as "illegal." However, in the context of Ms. Decker's statement, it appears that this conclusion was one she reached on her own as a human resources specialist and was not one that was communicated to her by counsel. Finally, Defendants have highlighted the section of Ms. Decker's statement where she recounts a meeting she had with

ORDER - 4

Allied in-house counsel Steve Helm. This section of her statement reflects what she told Mr. Helm during a meeting she had with him where she explained to him flaws she saw in Allied's approach to human resources. This communication does not appear to have been made for the purpose of receiving or giving legal advice and, thus, is not a privileged communication. In re Firestorm, 129 Wn. 2d at 141-42.

Likewise, the statements appearing in the notes of Mr. Castle's interview with Mr. Terrell reflect factual events or personal experiences of Mr. Terrell and are not privileged. The only part of Mr. Terrell's declaration that comes close to being privileged is his statement that he was instructed to only give oral reports to management and to not document any of his investigations. While this statement could be seen, when viewed leniently, as a recounting of litigation strategy, it is not a strategy that is secret at this stage of the litigation, under this Court's previous rulings on the Faragher-Ellerth defense. Moreover, this statement constitutes a fact regarding Mr. Terrell's time as an Allied employee. He does not state that he received such a directive from legal counsel.

**IV. Waiver of Privilege and the Faragher-Ellerth Defense**

Finally, Plaintiffs make the point that any privilege to which the investigations may have been subject in this case was waived by Defendants when they asserted the Faragher-Ellerth defense. This Court has issued several Orders regarding the Faragher-Ellerth defense and its application to this case. (See e.g. Dkt. Nos.132, 259, 265, 290). In Faragher v. City of Boca Raton and Burlington Industries Inc. v. Ellerth the U.S. Supreme Court held that an employer may be held vicariously liable for the creation of a hostile work environment by a supervisor although the employee suffered no adverse employment action. See Faragher, 524 U.S. 775, 802 (1998); Ellerth, 524 U.S. 742, 764 (1998). As a counter-weight to this holding, the Court also held that an employer may assert an affirmative defense to protect it from vicarious liability if it can show that it took reasonable measures to prevent and correct the situation and that the employee unreasonably failed to take advantage of these measures. Ellerth, 524 U.S. at 765. However, where the affirmative defense is asserted, attorney-client and work product privileges may be waived if they are being used to shield

ORDER - 5

information regarding an investigation or remedial efforts that the Defense has put at issue through the assertion of this defense. U.S. v. Ortland, 109 F. 3d 539, 543 (9th Cir. 1997) ("where a party raises a claim which *in fairness* requires disclosure of the protected communication the privilege may be waived.").

This Court has held that the Faragher-Ellerth defense raised by Defendants early in this matter will cause any investigation and remedial efforts into the discrimination alleged in this case, in which Defendants engaged and in which their attorneys were involved, to become discoverable, despite any attorney-client privilege that may have normally attached to such communications. The Court has made this ruling based on the principle that it is unfair for the Defense to hide its investigations and remedial efforts in this matter behind the veil of privilege up until the point of trial, where it plans to use evidence of its remedial efforts to evade liability. Ortland, 109 F. 3d at 543 (9th Cir. 1997) (the attorney client privilege may not be used "a sword and a shield" ). Not allowing Plaintiffs to inquire into how thorough or complete Defendants' investigation and remediation were before trial commences would put Plaintiffs at a distinct disadvantage.

Accordingly, even if the statements of Ms. Decker and Mr. Terry reveal privileged information, the Court finds that Defendants' assertion of the Faragher-Ellerth defense waives the privilege attached to any of the information contained in these statements. The information that Mr. Castle received from these witnesses is completely discoverable in the context of this case. For this reason the Court finds that the Peter Moote law firm committed no violations of its professional duties in this instance.

**V. Sanctions**

Plaintiffs move this Court for sanctions, stating that there was no proper basis for Defendants' motion. Plaintiffs' rely on the Court's inherent power, rather than Fed. R. Civ. P.11. The Court observes that Plaintiffs would have had to allow Defendants 21 days of safe harbor, if they had made this request under Rule 11. Fed. R. Civ. P. 11(c)(1)(A). The Court also notes that the basis for sanctions cited by Plaintiffs is one of the bases contemplated by Rule 11. For this reason, the Court

ORDER - 6

DENIES Plaintiffs' request for sanctions because sanctioning Defendants for the same behavior anticipated by Rule 11 without giving them the benefit of the safe harbor rule would violate the spirit of this rule and the Court's own standard of fairness.

CONCLUSION

The Court DENIES Defendants' motion to disqualify the Peter Moote law firm. Ms. Decker and Mr. Terrell are not "parties" to this litigation because they are former employees. Further, it does not appear that the content of any attorney-client communication or work-product was revealed to Plaintiffs. Finally, any privileged information that may have been revealed is considered by this Court to be waived by Defendants' assertion of the Faragher-Ellerth defense. The Court also DENIES Plaintiffs' request for sanctions. They invoke the principles of Fed. R. Civ. P. 11 without allowing for the 21 days' safe harbor under that rule.

The Clerk of the Court shall direct a copy of this order be sent to all counsel of record.

Dated: August 18th, 2006

Marsha J. Pechman
United States District Judge

ORDER - 7

Case 2:03-cv-03195-MJP   Document 611   Filed 08/18/06   Page 8 of 8